UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**Michael Picard**,
*Plaintiff,*

v.                                                               Case no.: 1:24-cv-12891-WGY

**Stephen J. Ridge**,
*Defendant.*

## MEMORANDUM IN SUPPORT OF SECOND MOTION FOR LEAVE TO AMEND COMPLAINT

### I.   INTRODUCTION

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given "when justice so requires." Mr. Picard seeks to add a general First Amendment claim based on the Defendant's own interrogatory responses, in which he admitted that his seizure of Mr. Picard's megaphone was motivated, at least in part, by the content of Mr. Picard's speech. This proposed amendment asserts a distinct constitutional theory—that the Defendant imposed a content-based restriction and engaged in prior restraint of protected expression—separate from the already-pleaded First Amendment retaliation claim. The amendment is timely, brought in good faith, it will not prejudice the Defendant or disrupt the orderly progression of this litigation, and it is not futile. Accordingly, Plaintiff respectfully requests that the Court grant leave to amend the complaint.

### II.   FACTS

This case arises from an incident that occurred on November 16, 2024, at a Men's March Against Abortion. **First Am. Compl. ¶ 7, ECF No. 27.** Mr. Picard was

1

there to exercise his First Amendment right to peacefully protest and satirize the Men's March by wearing a red handmaiden's dress, a white bonnet, a pink dog collar and a black leash, and speaking into his megaphone, among other things, "No more women's rights!" **Id. at ¶¶ 9, 11.** About 40 minutes into the march, counter-protestors blocked the roadway and brought the Men's March to a halt. **Id. at ¶ 12.** The Boston Police Department called in reinforcements and, after a conflict that resulted in arrests, the counter-protestors moved out of the roadway, allowing the Men's March to continue to the Boston Common. **Id. at ¶¶ 13, 14.** After the Men's March proceeded, Mr. Picard took to his megaphone, saying, "See what happens when you fuck with us men?" **Id. at ¶ 15**. Neither the Men's march, nor counter-protestors, responded to Mr. Picard. **Id. at ¶ 16**. Immediately, the Defendant grabbed Mr. Picard's megaphone, searched it by opening up a locked compartment of the megaphone, and rifled through the compartment. **Id. at ¶ 17.** When Mr. Picard questioned him about what right he had to seize his megaphone, the Defendant said, "you're inciting a riot." **Id. at ¶ 18.**

Mr. Picard filed this 42 U.S.C. § 1983 lawsuit against the Defendant on November 21, 2024. **ECF No. 1**. Mr. Picard sought to amend his complaint to, among other things, correct the factual record in the original complaint, **Id. at No.'s 22-24**, in which The Court granted in part. **Id. at No. 26**. Mr. Picard filed the First Amended Complaint. **Id. at No. 27**. Mr. Picard served his first set of discovery requests on the Defendant on June 30, 2025, which included interrogatory number 6: "[s]tate the full factual basis for your belief …[t]hat Mr. Picard was 'inciting a riot[.]'" The Defendant responded to said interrogatory on July 29, 2025, by stating: "Det. Ridge believed **Mr.**

2

**Picard's words** in combination with the volume of the megaphone were inciting counter-protesters in the wake of a violent encounter with his POP unit that led to multiple arrests." (Emphasis added). A true and correct copy of Plaintiff's Interrogatory No. 6 and Defendant's verified response is attached hereto as **Exhibit 2**. The Defendant also admitted in the Eighth Request for Admission that he did not witness Mr. Picard cause a riot, but that he was "concerned that [Mr. Picard] would cause a riot if he was allowed to continue using the megaphone to incite protestors and counter-protestors." A true and correct copy of Plaintiff's Request For Admission no. 8 and Defendant's verified response is attached hereto as **Exhibit 3**.

### III.    STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that, when a party seeks leave of court to amend a pleading, "[t]he court should freely give leave when justice so requires." This rule reflects a liberal amendment policy intended to promote the resolution of cases on their merits rather than on technicalities. **Foman** v. **Davis**, *371 U.S. 178, 182 (1962)*. The Supreme Court has emphasized that the mandate to freely allow amendments "is to be heeded." Id.

Under *Foman*, leave to amend should generally be granted absent evidence of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the amendment. Id. Courts in the First Circuit similarly adhere to this liberal standard, placing a strong emphasis on resolving cases based on substantive justice. See

**Nikitine** v. **Wilmington Tr. Co.**, *715 F.3d 388, 390 (1st Cir. 2013)* (noting that Rule 15 embodies a policy favoring amendments to ensure cases are decided on their merits).

Since no scheduling order has been issued in this case as far as amendments are concerned, these amendments do not fall outside of any deadline, and the stricter "good cause" standard of Rule 16(b) does not apply. Consequently, the Court's discretion is guided solely by **Fed. R. Civ. P. 15(a)(2)** and the "freely given" standard.

Moreover, an amendment is considered futile if it fails to state a claim upon which relief can be granted, based on the same standard as a motion to dismiss under Rule 12(b)(6). **Glassman** v. **Computervision Corp.**, *90 F.3d 617, 623 (1st Cir. 1996)*. However, courts are reluctant to deny leave to amend based on futility unless the proposed amendment is clearly insufficient or frivolous. See **Hatch** v. **Dep't for Children, Youth & Their Families**, *274 F.3d 12, 19 (1st Cir. 2001)*.

IV.   **ARGUMENTS**

   A.   **Leave to Amend is in the Interest of Justice Because Defendant's Discovery Responses Reveal a New Basis for a First Amendment Claim.**

Here, justice requires granting leave to amend because the Defendant's own discovery responses revealed, for the first time, a factual basis for a general First Amendment claim. **Ex. 1, Prop. Am. Compl., Count IV, ¶¶ 30 - 40**. First, the Defendant stated that he seized Mr. Picard's megaphone because he was "inciting a riot." **First Am. Compl. ¶ 18, ECF No. 27**; **Def.'s Answer to Pl.'s Compl. ¶ 18, ECF No. 15.**. When Mr. Picard, in an interrogatory, asked what factual basis the Defendant had to believe that Mr. Picard was inciting a riot, the Defendant responded, "Det. Ridge

4

believed Mr. Picard's *words* in combination with the volume of the megaphone were inciting counter-protesters in the wake of a violent encounter with his POP unit that led to multiple arrests." Ergo, the Defendant did not seize the megaphone solely based on the manner of Mr. Picard's speech (e.g., the volume of his megaphone)[1], but in response to *the content* of Mr. Picard's speech—"Mr. Picard's words," **Ex. 2, Def.'s Verified Interrogatory Response No. 6(a)**—rendering the restriction content-based. This raises serious constitutional concerns. It is a foundational rule of First Amendment jurisprudence that government officials may not restrict expression based on its content or viewpoint unless the speech falls into a narrow category of unprotected speech and satisfies strict scrutiny. **Rosenberger** v. **Rector & Visitors of Univ. of Va.**, *515 U.S. 819, 828–29 (1995)*. Here, Defendant's subjective belief that the speech was "inciting" others does not meet the well-established *Brandenburg* standard, which requires that speech be *intended* to incite, and *likely* to incite, imminent unlawful action. **Brandenburg** v. **Ohio**, *395 U.S. 444, 447 (1969)*.

    Secondly, the Defendant admitted that he seized Mr. Picard's megaphone because he was "concerned that [Mr. Picard] *would* cause a riot if he was allowed to *continue* using the megaphone to incite protestors and counter-protestors." **Ex. 3, Def.'s Verified Request For Admission Response No. 8** (Emphasis added). This is a classic example of prior restraint, as it restricts speech that had not yet occurred based on a speculative future event. A prior restraint occurs when the government suppresses or intervenes to prevent speech before it occurs or while it is being

---

[1] While Mr. Picard maintains that the "volume" justification is pretextual, that issue is not material to the present motion and is reserved for later briefing.

expressed. See **Alexander** v. **United States**, *509 U.S. 544, 550 (1993).*\* Courts have consistently held that prior restraints are "the most serious and the least tolerable infringement on First Amendment rights." **Nebraska Press Ass'n** v. **Stuart**, *427 U.S. 539, 559 (1976).*

Allowing the amendment under these circumstances promotes the interests of justice by ensuring that Mr. Picard may pursue all viable legal theories supported by the record. The proposed amendment arises directly from Defendants' own sworn statements and does not alter the core facts of the case. See **Foman** v. **Davis**, 371 U.S.

B. <u>No Undue Delay or Bad Faith Exists to Preclude Amendment</u>

Mr. Picard respectfully submits that there is no undue delay in seeking leave to amend the complaint. This theory of liability was not apparent at the time of the original pleading and only became clear once the Defendant served his discovery responses to Mr. Picard on July 29, 2025, disclosing the rationale for his conduct. Mr. Picard acted diligently by promptly reviewing the discovery responses, assessing how these new facts may affect the case, and filing this motion. Unlike in **Kay** v. **N.H. Dem.Party**, *821 F.2d 31, 34 (1st Cir. 1987)*, where three months had elapsed before seeking leave to amend, Mr. Picard sought leave to amend on August 12, 2025, just two week after the Defendant served his discovery responses on Mr. Picard, and only because Defendant's counsel was on vacation and could not be reached for D. Mass. LR. 7.1 conference.

Courts have consistently held that discovery of new facts justifies a motion to amend because it allows the claims to be decided on their merits. See **Acosta-Mestre** v. **Hilton Int'l of Puerto Rico, Inc.**, 1*56 F.3d 49, 52 (1st Cir. 1998)* ("'The principal justification for amendments under Rule 15(a) is to facilitate decision on the merits, rather than on the pleadings or technicalities.'").

There is no evidence of bad faith, dilatory motive, or manipulation by Mr. Picard—he acted diligently by moving to amend shortly after obtaining the discovery responses. This amendment is not an attempt to delay the proceedings or burden the Defendant, it is a good-faith effort to assert a claim plainly supported by the newly disclosed facts.

### C. **NO UNDUE PREJUDICE TO DEFENDANT**

Allowing this amendment will not unduly prejudice Defendant. The proposed First Amendment claim arises directly from the Defendant's own sworn discovery responses and is based on facts already known to and articulated by the Defendant himself. The amendment does not introduce any new events, parties, or factual allegations requiring additional discovery. Rather, it adds a legal theory—content-based restriction and prior restraint under the First Amendment—that flows naturally from the existing record.

Moreover, discovery in this case is still ongoing. In fact, the Defendant has just propounded his First Set of Discovery Requests on Mr. Picard, which includes an interrogatory requesting that Mr. Picard "[s]tate with specificity all facts that you believe support your claim that Det. Ridge violated your First Amendment rights…," and including the deposition of Mr. Picard on August 20, 2025. The Defendant, therefore,

remains fully able to pursue any additional discovery he believes is necessary to respond to the amended claim.

There is no risk that Defendant will be denied the opportunity to develop the record or prepare a defense. Defendant cannot reasonably claim surprise or hardship in defending against a legal claim that is grounded in his own stated justification for his conduct. Because the facts remain the same and no substantial procedural disruption will result, there is no risk of undue prejudice.

### D.  **THE AMENDMENT IS NOT FUTILE.**

"An amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss." **Menard** v. **CSX Transp., Inc.**, *840 F. Supp. 2d 421, 427 (D. Mass. 2012)*. A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); **Bell Atl. Corp.** v. **Twombly**, *550 U.S. 544, 570 (2007)*.

The proposed First Amendment claim is far from futile. First, as to the content-based restriction, Mr. Picard has plausibly alleged that he was engaged in protected speech when he spoke into his megaphone and criticized the police for their heavy-handed response—stating, "see what happens when you fuck with us men?" Second, Mr. Picard has plausibly alleged that the Defendant imposed a restriction on his speech by seizing the megaphone—a quintessential instrument of protest and expressive conduct. "Loud-speakers are today indispensable instruments of effective public speech." **Saia** v. **New York**, *334 U.S. 558, 561 (1948)*. Megaphones are no

different. To seize Mr. Picard's megaphone in response to his words is to impose a content-based restriction on speech.

Third, Mr. Picard has plausibly alleged—and the Defendant himself admitted in his verified interrogatory response—that the Defendant acted based on "Mr. Picard's words" (i.e., the content of his speech). **Ex. 2, Def.'s Interrogatory Verified Response 6(a)**. The Defendant may attempt to walk back his statement back, or argue that Mr. Picard's speech falls into an unprotected category. However, The Court must accept all well-pleaded allegations as true and draw all reasonable inferences in Mr. Picard's favor. **Erickson** v. **Pardus**, *551 U.S. 89, 94 (2007)*.

Finally, Mr. Picard has plausibly alleged that the Defendant's actions cannot survive strict scrutiny. The only compelling government interest that could have been advanced—maintaining public order—was not at issue at the time of the seizure. After all, there was a cooling off period, and then the crowds walked and chanted peacefully beside each other. **First Am. Compl. ¶¶ 14-16, ECF No. 27**. There is no objective evidence that public safety was at risk at the moment of the seizure. Even if public safety had been a legitimate concern, the Defendant's actions were not narrowly tailored to serve that interest. Seizing Mr. Picard's megaphone—a direct and categorical suppression of speech—is far more restrictive than necessary. There were obvious, less restrictive alternatives available, such as issuing Mr. Picard a warning, requesting that he lower the volume, or engaging with him to de-escalate. The Defendant chose instead to silence him entirely, which fails both the narrow tailoring and least restrictive means requirements under strict scrutiny.

Likewise, the proposed prior restraint claim is not futile. Mr. Picard has further alleged that the Defendant seized his megaphone not because he witnessed Mr. Picard actually cause a riot—he did not— but because the Defendant was "concerned" that Mr. Picard might cause one if he continued speaking. That is the very definition of a prior restraint: government suppression of speech in anticipation of harm, based on speculation about what might occur rather than evidence of what is occurring. Here, Mr. Picard has plausibly alleged that, at the time of the seizure, the protest was peaceful, the earlier disturbance had already been quelled, and there was no objective evidence that his words or conduct would lead to imminent lawless action. This directly undercuts any claim that the seizure was justified as an immediate necessity to prevent violence. Whether Mr. Picard's words amounted to incitement under **Brandenburg** v. **Ohio**, *395 U.S. 444 (1969),* Whether the Defendant's stated concern was reasonable, and whether any exigent circumstances actually existed, are all fact-intensive questions inappropriate for resolution at this stage of the case. At this juncture, the Court must accept Plaintiff's well-pleaded allegations as true, and those allegations describe nothing more than a speculative, preemptive suppression of speech—which is precisely what the prior restraint doctrine forbids.

## V. CONCLUSION

Because the proposed amendment serves the interests of justice, involves no undue delay or bad faith, imposes no undue prejudice on the Defendant, and is not futile, Mr. Picard respectfully requests that this Honorable Court grant his motion for leave to amend his complaint and award any further relief it deems just and proper.

Dated: August 12, 2025   /s/ Michael Picard

        THE PLAINTIFF,
        MICHAEL PICARD
        142 Bissell St.
        Manchester, CT 06040
        Phone: (860) 306-4955
        Email: Michael@Picard.co

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2025, I filed the foregoing Memorandum In Support of the Second Motion For Leave to Amend Complaint, and all exhibits attached thereto, through the ECF system, which will be sent electronically to all parties registered, or by first class mail to all parties not registered.

      /s/ Michael Picard
      Michael Picard

11