UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL PICARD,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>STEPHEN RIDGE,<br><br>　　　　　　Defendant. | No. 1:24-cv-12891-WGY |

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT**

HEDGES, M.J.

　　　Plaintiff Michael Picard brings this action *pro se* pursuant to Section 1983 against Defendant Stephen Ridge, a detective for the Boston Police Department, alleging civil rights violations under the First, Fourth and Fourteenth Amendments.  Docket No. 27.  Mr. Picard initiated this action on November 21, 2024, and filed his first amended complaint with leave of court on May 29, 2025.  Docket Nos. 1, 27.  On August 12, 2025, Mr. Picard filed the instant motion, seeking leave to file a second amended complaint to include an additional claim for violation of Mr. Picard's First Amendment rights due to "Content-Based Restriction and Prior Restraint."  Docket No. 30-1 ¶¶ 30-40.  Because I find that the content-based restriction amendment would not be futile, while the prior restraint amendment would, I recommend that the District Judge ALLOW in part and DENY in part Mr. Picard's motion.

## I.　FACTUAL BACKGROUND AND PROCEDURAL HISTORY

　　　On November 16, 2024, Mr. Picard participated as a counter-protestor to a rally on Commonwealth Avenue in Boston billed as "[t]he National Men's March to Abolish Abortion and Rally for Personhood" (the "Men's March").  Docket No. 27 ¶¶ 7, 9.  Mr. Picard alleges that

1

during the Men's March, he "joined alongside the men, lampooning them by wearing a red handmaiden's dress, a white bonnet, a pink dog collar and a black leash, speaking into his megaphone" statements such as "No more women's rights!" and "Her vagina, our choice!" *Id.* ¶ 11. He alleges that "[a]pproximately 40 minutes after the march … commenced … counterprotesors [*sic*] blocked the roadway, bringing the march to a halt." *Id.* ¶ 12. Shortly after, police "called in reinforcements and ordered the counterprotestors [*sic*] who were blocking the roadway to disperse." *Id.* ¶ 13. Mr. Picard alleges that after the counter-protestors dispersed with few arrests, and the Men's March resumed, he continued using his megaphone, "saying, 'See what happens when you fuck with us men?' inferring that dissent will be silenced by riot police." *Id.* ¶¶ 14-15. Mr. Picard asserts that after making this statement, although the Men's March participants and counter-protestors "continued to peacefully march and chant alongside each other," Boston Police Detective Ridge "grabbed [Mr. Picard's] megaphone from his hand, without warning, and searched it," informing Mr. Picard that he was "inciting a riot." *Id.* ¶¶ 16-18. Mr. Picard further alleges that Detective Ridge did not return his megaphone, but "ordered [Mr. Picard] away from him," and that "riot police shoved [Mr. Picard] away." *Id.* ¶ 19.

Five days later, on November 21, 2024, Mr. Picard initiated this action asserting a First Amendment retaliation claim (Count I), a claim for unreasonable seizure of property under the Fourth Amendment (Count II), and a Fourteenth Amendment due process claim (Count III), all pursuant to 42 U.S.C. § 1983. Docket No. 1. Detective Ridge moved to dismiss the complaint for failure to state a claim on January 28, 2025. Docket No. 8. After a hearing, on March 20, 2025, the Court denied Detective Ridge's motion to dismiss on all counts. Docket No. 18. On May 9, 2025, Mr. Picard filed a motion for leave to file a proposed first amended complaint to correct or add factual allegations and to add an additional First Amendment retaliation claim.

Docket No. 22 at 1-2.  Detective Ridge opposed the motion as to both the addition of the new First Amendment retaliation claim and the factual allegations in support of the new claim. Docket No. 25 at 1.  On May 28, 2025, the Court denied Mr. Picard's motion, save for the restated factual allegations.  Docket No. 26.

Mr. Picard filed an amended complaint on May 29, 2025.  Docket No. 27.[1]  On August 12, 2025, Mr. Picard filed the present motion, seeking leave to file a second amended complaint to include an additional claim for violation of Mr. Picard's First Amendment rights due to "Content-Based Restriction and Prior Restraint."  Docket No. 30-1 ¶¶ 30-40.  Detective Ridge opposes Mr. Picard's motion, asserting that the new First Amendment claim is futile.  Docket No. 32 at 2.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires."  However, "a district court may deny leave to amend when the request is characterized by undue delay, bad faith, futility, or the absence of due diligence on the movant's part."  *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 20 (1st Cir. 2017) (cleaned up).  In determining whether to grant a motion to amend, courts "examine the totality of the circumstances and … exercise [their] informed discretion in constructing a balance of pertinent considerations."  *Id.* at 20-21 (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006)).  District courts enjoy "significant latitude in deciding whether to grant leave to amend."  *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008) (recognizing liberal amendment policy of Rule 15).

---

[1] The Court notes that Detective Ridge did not file a response to Mr. Picard's amended complaint.

Detective Ridge argues that Mr. Picard's proposed amendment is futile.[2]  In assessing futility, courts apply the standard that governs a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Morgan v. Town of Lexington, MA*, 823 F.3d 737, 742 (1st Cir. 2016) (citing *Adorno v. Crowley Towing & Transp. Co*., 443 F.3d 122, 126 (1st Cir. 2006)); *see also Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) ("There is no practical difference … between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim.").  Accordingly, the court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor."  *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011) (citation omitted).  A proposed amendment is "not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory."  *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001).

## III.    DISCUSSION

In requesting leave to amend his complaint for a second time, Mr. Picard seeks to assert a new claim for alleged violations of Mr. Picard's First Amendment rights due to "Content-Based Restriction and Prior Restraint."  Docket No. 30-1 ¶¶ 30-40.  In support of this claim, Mr. Picard alleges that Detective Ridge's seizure of his megaphone "immediately after" he stated "see what happens when you fuck with us men?" was based on the content of his speech "because Defendant Ridge disapproved of the message [Mr. Picard] conveyed or anticipated that others might react unfavorably to it."  *Id.* ¶¶ 32-33, 35.  Mr. Picard asserts that Detective Ridge

---

[2] Because Detective Ridge does not challenge the proposed amendment on the grounds of undue delay, bad faith, or lack of due diligence, I need not address those grounds here.

Case 1:24-cv-12891-WGY    Document 39    Filed 02/05/26    Page 5 of 15

"admitted that his seizure of [the] megaphone was motivated, at least in part, by the content of Mr. Picard's speech." Docket No. 31 at 1. Specifically, Mr. Picard relies on Detective Ridge's responses to interrogatories and requests for admission, where Detective Ridge states that he "believed Mr. Picard's words in combination with the volume of the megaphone were inciting counter-protestors in the wake of a violent encounter with his POP unit that led to multiple arrests," and that Detective Ridge "did not witness Mr. Picard cause a riot, but [] witnessed him escalating the situation and was concerned that [Mr. Picard] would cause a riot if he was allowed to continue using the megaphone to incite protestors and counter-protestors." Docket No. 31 at 2-3 (emphasis omitted); Docket No. 31-1 at 3; Docket No. 31-2 at 3.[3]

Mr. Picard also alleges that Detective Ridge's seizure of his megaphone "constituted an unlawful prior restraint because it prevented [Mr. Picard] from continuing to speak to the assembled audience in real time, silencing future protected expression before it occurred." Docket No. 30-1 ¶ 37.

Detective Ridge opposes Mr. Picard's motion on futility grounds, arguing that (1) the challenged police actions targeted Mr. Picard's conduct, and not the content of his speech, (2) even if the challenged police actions are deemed a content-based restriction, Mr. Picard's speech was "inciting imminent lawless behavior" and thus unprotected by the First Amendment, (3) the

---

[3] Although Mr. Picard did not amend the facts section of his proposed second amended complaint to add these facts in support his new claim, they are included in his memorandum of law and in the attachments thereto. Docket No. 31 at 2-3. Thus, the Court treats these facts as if they had been included as allegations in the proposed amendment. *See Drachman v. Bos. Sci. Corp.*, 258 F. Supp. 3d 207, 210 (D. Mass. 2017) (noting that court may consider facts "gleaned from documents incorporated by reference" in assessing viability of proposed complaint amendment); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations in *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers"). In his opposition, Detective Ridge similarly treats these facts as if they had been alleged in the proposed second amended complaint. Docket No. 32 at 1, n. 1.

challenged police actions were "not a prior restraint of future activity, but rather a reaction to unprotected speech that had already occurred," and (4) even if the Court finds a constitutional violation, Detective Ridge is entitled to qualified immunity because "the law is not clearly established" due to the decision in *Commonwealth v. Marcavage,* 918 N.E.2d 855 (Mass. App. Ct. 2009). Docket No. 32 at 2-3.

### A. Content-Based Restriction

"As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Alvarez*, 567 U.S. 709, 715 (2012) (cleaned up). "Evaluating the constitutionality of a speech restriction first requires a determination about whether the restriction is content based or content neutral." *Signs for Jesus v. Town of Pembroke, NH*, 977 F.3d 93, 101 (1st Cir. 2020) (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015)).

Content-based restrictions target speech based on "the topic discussed or the idea or message expressed." *McCoy v. Town of Pittsfield, NH*, 59 F.4th 497, 505 (1st Cir. 2023) (quoting *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022)). Such restrictions are presumptively invalid, *Alvarez*, 567 U.S. at 716-17, and "are subject to strict scrutiny, which requires the government to demonstrate that the restriction advances a compelling interest and is narrowly tailored to achieve that interest," *McCoy*, 59 F.4th at 506 (cleaned up). "Content-neutral regulations, by contrast, 'serve[ ] purposes unrelated to the content of expression,' and are subject to intermediate scrutiny which requires that the restrictions be 'narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Signs for Jesus*, 977 F.3d at 101 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). "Judges, as

6

expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold." *Newton v. LePage*, 700 F.3d 595, 601 (1st Cir. 2012) (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984)). "This analysis involves both factual and legal determinations about the speech that is being regulated, the nature of the forum, the government's interests, and the tailoring of the imposition on protected speech." *Brown v. Gov't of D.C.*, 390 F. Supp. 3d 114, 123 (D.D.C. 2019). "Thus, courts typically do not reach the *merits* of a First Amendment challenge at the motion-to-dismiss stage." *Id*. (emphasis in original); *see also Morgan*, 823 F.3d at 742 (applying motion to dismiss standard in evaluating futility of motion for leave to amend).

Here, Detective Ridge argues that Mr. Picard's new claim is futile because the pleaded facts establish that the taking of Mr. Picard's megaphone was based on the "volume and timing of [Mr. Picard's] words ... not the words themselves." Docket No. 32 at 6. In other words, Detective Ridge argues that his actions were content-neutral. Detective Ridge further argues that there was no restriction of speech where "Mr. Picard was free to continue his speech for the rest of the permitted Men's March" because he "did not arrest Mr. Picard or tell him he could not use the words ... he took away the megaphone." *Id.* at 7.

Starting with the second argument, the right to amplify speech, such as by use of megaphones, is protected by the First Amendment. *See Saia v. People of State of New York*, 334 U.S. 558, 561 (1948) ("Loud-speakers are ... indispensable instruments of effective public speech"); *Ward*, 491 U.S. at 803 (analyzing sound-amplification ordinance under First Amendment). Thus, Detective Ridge's contention that there was no restriction of speech simply because he took away Mr. Picard's megaphone is unavailing. Accordingly, the relevant question is whether Mr. Picard has plausibly alleged that Detective Ridge's seizure of his megaphone

"immediately after" chanting "see what happens when you fuck with us men?" targeted his speech based on content. Docket No. 30-1 ¶¶ 32-35. I find that Mr. Picard has met this low-threshold requirement.

Although Detective Ridge asserts that his actions were based on the "volume and timing" of Mr. Picard's words, rather than their content, Docket No. 32 at 6, mere disagreement with Mr. Picard's factual assertions do not make the assertions implausible. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("the court may not disregard properly pled factual allegations, even if … actual proof of those facts is improbable." (cleaned up)); *accord Brown*, 390 F. Supp. 3d at 126 ("[i]t is clear beyond cavil that a defendant cannot ignore, or contradict, a complaint's factual allegations in a bid to seek its dismissal, no matter how strong the defendant's merits arguments might be."). Here, Mr. Picard plausibly alleges that Detective Ridge's seizure of the megaphone was motivated by the content of his speech where: (1) Mr. Picard's political protest and "criticism of the heavy-handed police response" was expressive activity protected by the First Amendment, Docket No. 30-1 ¶ 31; (2) Detective Ridge seized the megaphone "immediately after" Mr. Picard shouted "see what happens when you fuck with us men?" at the police, *id.* ¶¶ 32-33; and (3) Detective Ridge admitted that he seized the megaphone because he "believed Mr. Picard's *words* in combination with the volume of the megaphone were inciting counter-protestors," Docket No. 31 at 4-5 (emphasis in original). At this stage, I must accept these alleged facts as true and therefore find that Mr. Picard has plausibly alleged a content-based restriction. [4] I also find that for purposes of surviving a challenge on futility

---

[4] I am unpersuaded by Detective Ridge's arguments to the contrary. The cases upon which Detective Ridge relies are both procedurally and factually inapposite. Docket No. 32 at 7-8; *see Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 198-201 (3d Cir. 2008) (affirming *summary judgment* in favor of defendants after engaging in extensive factual and legal analysis to find that "under the[] circumstances" presented, the police actions in relocating religious

grounds, Mr. Picard has plausibly alleged that Detective Ridge's seizure of his megaphone could not survive strict scrutiny. *See* Docket No. 31 at 9 (highlighting Docket No. 27 ¶¶ 14-16 and discussing less restrictive alternatives for maintaining public order).

### B. Incitement

Next, Detective Ridge argues that even if he took Mr. Picard's megaphone because of the content of his speech, rather than his conduct, Detective Ridge's actions were reasonable because Mr. Picard's speech was "inciting or producing imminent lawless action." Docket No. 32 at 8. Detective Ridge asserts that "[t]here is no question that yelling 'see what happens when you fuck with us men?' at counter-protesters through a megaphone while pretending to be with the protesters in the moments after a violent conflict between the counter-protesters and police was directed to inciting additional lawless action by counter-protesters." *Id.* at 9. In short, Detective Ridge argues that Mr. Picard's speech fell into the category of "incitement," which is not protected by the First Amendment.

The Supreme Court has firmly established that "[t]he mere tendency of speech to *encourage* unlawful acts is not a sufficient reason for banning it." *Ashcroft v. Free Speech Coal.,* 535 U.S. 234, 253 (2002) (emphasis added). Rather, the state may not "forbid or

---

counter-protestors using megaphones at gay pride parade were content-neutral time, place, and manner restrictions); *Relf v. Pender,* No. 1:21-cv-11734-AK, 2023 WL 349849, at *3 (D. Mass. Jan. 20, 2023) (allowing motion to dismiss First Amendment claims where plaintiff's allegations indicated that plaintiff's "violation of the city's noise ordinance, his blocking of the sidewalk, and his belligerent conduct, rather than his use of his First Amendment rights, were the motivating factors in his arrest" such that plaintiff failed to adequately allege that officers lacked probable cause, a threshold requirement for First Amendment retaliatory prosecution cases); *Marcavage,* 918 N.E.2d at 860 (affirming conviction for disorderly conduct after finding no First Amendment violation upon review of factual record); *Commonwealth v. Manolo M.*, 261 N.E.3d 832, 844-45 (Mass. 2025) (affirming delinquent adjudications for resisting arrest and rejecting First Amendment defense where officers had probable cause to make arrests).

proscribe advocacy of the use of force or of law violation *except* where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (emphasis added).  "[T]he First Amendment precludes punishment … unless the speaker's words were intended (not just likely) to produce imminent disorder … That rule helps prevent … deterring mere advocacy of illegal acts—a kind of speech falling within the First Amendment's core." *Counterman v. Colorado*, 600 U.S. 66, 76 (2023) (cleaned up).

Here, accepting Mr. Picard's allegations as true, Detective Ridge's attempt to cast Mr. Picard's speech as incitement falls short.  Detective Ridge argues that Mr. Picard's "statement was likely to incite imminent lawless action" where Detective Ridge's "unit was only on scene because it had been called out to respond to lawless action that had just ended moments before with several arrests."  Docket No. 32 at 9.  But, as Mr. Picard notes, there had been a "cooling off period" between the arrests and the megaphone seizure, during which "the crowds walked and chanted peacefully beside each other."  Docket No. 31 at 9 (citing Docket No. 27 ¶¶ 14-16).  At this stage, it is not clear Mr. Picard's words were "'directed [at] producing imminent lawless action,' and likely to do so."  *Counterman*, 600 U.S. at 73 (quoting *Bradenburg*, 395 U.S. at 447)).

Detective Ridge is correct that "[c]onduct that creates special risks or causes special harms may be prohibited by special rules" and that "[t]hreatening someone because of her race or religious beliefs may cause particularly severe trauma or touch off a riot,"  Docket No. 32 at 9 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 416 (1992) (Stephens, J., concurring)).  But here, Mr. Picard's conduct does not fit neatly into that paradigm.  For one thing, Mr. Picard was not making racially or religiously charged threats.  And for another, *R.A.V.,* where the petitioner

was criminally charged under a city ordinance for burning a cross on the lawn of a Black family, is plainly inapposite. *R.A.V.*, 505 U.S. at 379-80. Whether Mr. Picard's speech amounts to incitement is better informed by the court's reasoning in *Hess v. Indiana*, where the Supreme Court held that a protestor yelling, "We'll take the fucking street later," amidst an agitated crowd that was blocking a public street and resisting police authority was not incitement. 414 U.S. 105, 107 (1973). In short, I am unpersuaded that Mr. Picard's actions constituted incitement as a matter of law such that his proposed amendment is futile.

### C. Prior Restraint

Detective Ridge next argues that Mr. Picard's prior restraint claim is futile where the challenged police actions were not a prior restraint of future activity, because "Det[ective] Ridge did not bar or 'forbid' Mr. Picard from protesting the police response or satirizing the Men's March in the future" but instead, "took his megaphone away … *after* Mr. Picard made the statement in question." Docket No. 32 at 11 (emphasis in original). Detective Ridge further argues that "[t]he circumstances here are not the traditional prior restraint, where there exists a law, regulation, restraining order, injunction, gag order or other legislative, agency or judicial endorsement of a restriction on future speech." *Id.* at 2.

"A prior restraint is a government regulation that limits or conditions in advance the exercise of protected First Amendment activity." *Auburn Police Union v. Carpenter*, 8 F.3d 886, 903 (1st Cir. 1993) (citation omitted); *see also Matter of Providence J. Co.*, 820 F.2d 1342, 1346 (1st Cir. 1986), *opinion modified on reh'g*, 820 F.2d 1354 (1st Cir. 1987) ("a prior restraint 'freezes' speech before the audience has the opportunity to hear the message."). "Temporary restraining orders and permanent injunctions—*i.e.,* court orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544,

550 (1993) (RICO forfeiture order effectively shutting down petitioner's adult entertainment business was not a prior restraint on speech but a punishment on past conduct to be analyzed under normal First Amendment standards).

In support of his prior restraint claim, Mr. Picard alleges that Detective Ridge's seizure of his megaphone "constituted an unlawful prior restraint because it prevented [Mr. Picard] from continuing to speak to the assembled audience in real time, silencing future protected expression before it occurred." Docket No. 30-1 ¶ 37. However, the thrust of Mr. Picard's new proposed First Amendment claim hinges on allegations that Detective Ridge seized Mr. Picard's megaphone *in response to* the content of his speech. *Id.* ¶¶ 35-36. To find the same alleged conduct also constitutes a prior restraint "would undermine the time-honored distinction between barring speech in the future and penalizing past speech." *Alexander*, 509 U.S. at 553. Thus, I find that Mr. Picard has failed to plausibly allege that Detective Ridge's conduct amounted to a prior restraint on his speech, and I find that the proposed prior restraint amendment would be futile.

### D. Qualified Immunity

Lastly, Detective Ridge argues that even if the Court finds a First Amendment violation, he is entitled to qualified immunity because the law surrounding Mr. Picard's right to use a megaphone is not clearly established. Docket No. 32 at 2-3. "Qualified immunity shields public officials from personal liability for 'actions taken while performing discretionary functions.'" *Ciarametaro v. City of Gloucester*, 87 F.4th 83, 87 (1st Cir. 2023) (citing *Lynch v. City of Boston*, 180 F.3d 1, 13 (1st Cir. 1999)). "[A] court will grant qualified immunity unless it is sufficiently clear that every reasonable official would have understood that what he was doing violated the plaintiff's rights." *Id.* at 88 (cleaned up).

When a defendant invokes the qualified immunity doctrine, the court undertakes a two-prong inquiry to determine: (1) "whether the facts that a plaintiff has alleged … make out a violation of a constitutional right" and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (cleaned up). Lower courts are permitted to use their "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236 (noting that beginning with first prong of inquiry may be "beneficial" to "promot[ing] the development of constitutional precedent"); *see also Perry v. Spencer*, 94 F.4th 136, 146 (1st Cir. 2024) (declining to bypass first prong of inquiry). For the reasons discussed above, I find that that Mr. Picard has plausibly alleged enough facts to assert a violation of his First Amendment rights. *See supra* Section III.A (citing *Saia*, 334 U.S. at 561; *Ward*, 491 U.S. at 803). Thus, I proceed to the second inquiry.

In determining whether the right in question is clearly established, the court considers: "(a) whether the legal contours of the right … were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official." *Diaz-Bigio v. Santini*, 652 F.3d 45, 50 (1st Cir. 2011) (citing *Decotiis v. Whittemore,* 635 F.3d 22, 36 (1st Cir. 2011)). "General statements of the law may give fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Perry*, 94 F.4th at 164 (cleaned up). Moreover, "[a]mbiguity in the law cannot be manufactured by borrowing from factually and legally distinguishable cases." *Marrero-Méndez v. Calixto-Rodríguez*, 830 F.3d 38, 48 (1st Cir. 2016) (citation omitted).

Here, Detective Ridge argues that Mr. Picard's right to use his megaphone was not clearly established in light of the court's holding in *Commonwealth v. Marcavage,* 918 N.E.2d 855 (Mass. App. Ct. 2009).  Docket No. 32 at 2-3, 11-12.  There, the Massachusetts Appeals Court affirmed the disorderly conduct conviction of the petitioner, a street evangelist who was arrested on Halloween night in Salem, Massachusetts, while proselytizing with a megaphone. *Marcavage,* 918 N.E.2d at 856-57.  Specifically, the evidence adduced at trial demonstrated that the petitioner created a disturbance by: blocking pathways, encroaching upon the personal space of others with his megaphone, waving a Bible "within inches" of people's faces, and "accosting" and yelling at people "within inches of their faces." *Id.*  The petitioner's conduct prompted many complaints by people passing by, and the petitioner and his colleague were warned by police to cease using their megaphones.  *Id.*  The court noted that as the evening progressed, "the earlier family atmosphere began to disappear" and the crowd became "noisy and raucous" and "the area was congested and became dangerous."  *Id*. at 857-58.  After the petitioner refused police orders to stop using his megaphone, the police confiscated the megaphone and arrested the petitioner for disorderly conduct.  *Id.*  Although acknowledging that the petitioner's "underlying conduct … may have enjoyed First Amendment protection," the court concluded that his arrest was "lawful as a measured and appropriate response to a bona fide public safety threat" and found "nothing in the record to support the inference that the decision to curtail the [petitioner's] use of the megaphone was in any way connected with the content of his speech."  *Id.* at 860.

In other words, the court in *Marcavage* found that, based on the specific facts presented, the police's conduct in confiscating the petitioner's megaphone and arresting him was a content-neutral, justifiable response to "a bona fide public safety threat" and thus not a constitutional violation.  *Id.*  *Marcavage* does not stand for the proposition that using a megaphone to comment

on matters of public concern during a political protest is unprotected by the Constitution. Indeed, such a right is firmly protected by the First Amendment, and that right was clearly established at the time of Mr. Picard's conduct.  *See Alvarez*, 567 U.S. at 716; *Saia* 334 U.S. at 561.  Accordingly, I find that at this stage in the litigation, accepting the pleaded facts as true, qualified immunity does not shield Detective Ridge from suit.

## IV.    RECOMMENDATION

For the reasons set forth above, I recommend that the District Judge ALLOW Mr. Picard's motion for leave to file a second amended complaint (Docket No. 30) as to his new claim for content-based restriction, and that Mr. Picard be allowed to include the factual allegations referenced in his memorandum of law in support of his new claim.  I further recommend that Mr. Picard's motion be DENIED as to his new claim for prior restraint.[5]

SO ORDERED.

Dated: February 5, 2026

/s/ Jessica D. Hedges
United States Magistrate Judge

---

[5] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b) and Rule 3 of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within fourteen days of service of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.