**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 1:24-cv-12891-WGY**

MICHAEL PICARD,

        Plaintiff,

v.

STEPHEN J. RIDGE,

        Defendant.

**DETECTIVE STEPHEN J. RIDGE'S MEMORANDUM OF LAW IN SUPPORT**
**OF HIS MOTION FOR SUMMARY JUDGMENT**

Detective Stephen J. Ridge submits this memorandum of law in support of his motion for summary judgment on all counts[1] of the Second Amended Complaint of plaintiff Michael Picard ("Mr. Picard") in the above-captioned matter.[2]  Mr. Picard's claims against Det. Ridge are based on alleged violations of his rights under the First and Fourteenth Amendments of the United States Constitution.  Mr. Picard contends that Det. Ridge violated these rights when he confiscated his megaphone – which was later returned to him – after Mr. Picard antagonized counter-protesters at an anti-abortion Men's March where a violent conflict had just occurred.  Mr. Picard is wrong.

---

[1] Mr. Picard asserts four counts against Det. Ridge: (1) Count I for alleged First Amendment retaliation; (2) Count II for alleged unconstitutional seizure of his property under the Fourth Amendment; (3) Count III for alleged violations of the Due Process Clause of the Fourteenth Amendment; and (4) Count IV for alleged content-based discrimination under the First Amendment.  Although the Counts purport to be brought under these provisions of the U.S. Constitution, Mr. Picard does refer to this as a "§ 1983" lawsuit in his introductory paragraph.  As a result, Det. Ridge treats each count as a claim brought under 42 U.S.C. § 1983.

[2] Mr. Picard has twice moved to amend his initial complaint [Doc. Nos. 22 and 30] to mixed results, with the net result the four-count Second Amended Complaint that is the operative pleading [Doc. No. 43].  Pursuant to this Court's order [Doc. No. 35] granting the parties' motion to modify the scheduling order [Doc. No. 34], which requires summary judgment motions to be filed within fourteen (14) days of the Court's decision on the second motion to amend, Det. Ridge is filing this motion in lieu of an answer to the Second Amended Complaint.

**Preliminary Statement**

That Det. Ridge's intent in seizing Mr. Picard's megaphone had nothing to do with the exercise or content of Mr. Picard's speech could not be more evident. His intent is captured in the moment on multiple cameras, including several Boston Police Department ("BPD") body-worn cameras ("BWCs") and Mr. Picard's GoPro footage of the encounter. In response to Mr. Picard's inquiry as to why he was taking the megaphone Det. Ridge had an immediate and simple answer: "*You're inciting a riot.*" This is further bolstered by the fact that Det. Ridge did not initially decide to retain the megaphone, instead attempting to remove the batteries before giving it back to Mr. Picard. It was only when he was unable to remove the batteries that Det. Ridge elected to put the megaphone on a BPD cruiser and rejoin the police line proceeding in front of the protesters.

Det. Ridge's concerns about the potential for inciting a riot were warranted. One had just occurred. This was the only reason that Det. Ridge's specialized POP unit, which handles riot and crowd control, was deployed that day. POP units are "deployed in cases of extreme violence and disruption or when the potential exists for such a situation to develop." The BWC footage from members of the POP unit from just minutes before the encounter between Det. Ridge and Mr. Picard reveals a chaotic and violent scene in Kenmore Square with pro-choice counter-protesters blocking the route of the pro-life Men's March. Police reports reveal fourteen arrests and two injured officers, each of whom had to go to the hospital, and one of whom lost his BWC when he fell during the conflict. Prior to an officer in trouble call at the outset of the conflict, Det. Ridge's unit was on standby on the other end of Commonwealth Avenue at Boston Common. They were deployed to halt the violence and disruption and were tasked to prevent it until the end of the march. It was in this context, moments after helping resolve a violent conflict, that Det. Ridge heard Mr. Picard over the megaphone say, "*see what happens when you fuck with us men*?"

Based on the undisputed facts – which are largely captured on video – each of Mr. Picard's constitutional claims fails as a matter of law. Count I for First Amendment retaliation fails because Det. Ridge had sufficient probable cause to arrest Mr. Picard for disorderly conduct or disturbing the peace. That he did not make an arrest is of no consequence – he had probable cause to seize the instrumentality of those crimes – the megaphone. For the same reason, this probable cause supports the warrantless seizure of the megaphone given the exigent circumstances and the fact that Det. Ridge observed Mr. Picard use the megaphone to commit the crimes for which he had probable cause to arrest him. Count II for violations of the Fourth Amendment likewise fails.

With respect to Count III for violations of Mr. Picard's due process rights, there can be no substantive due process claim for the seizure of the megaphone as seizures of property are already covered by the Fourth Amendment. For procedural due process, the Massachusetts Supreme Judicial Court ("SJC") has held that the relevant statute is constitutionally sound and there is no evidence that Mr. Picard availed himself of any process to get the megaphone back other than filing this lawsuit. Once Det. Ridge learned of Mr. Picard through this lawsuit, he started the process of returning it to him – the short delay of a few months so that it could be returned in person is not a violation of due process. Count IV for content-based restriction on speech fails for two distinct reasons: (1) the megaphone was not taken because of the content of his speech; and (2) even if it were, Mr. Picard's speech was not protected in these circumstances.

Even if the Court were to determine that the seizure of the megaphone was a constitutional violation, Det. Ridge is entitled to qualified immunity. Based on the Massachusetts Appeals Court's decision *Commonwealth v. Marcavage*, which was relied upon by the Federal District Court in *Relf v. Pender*, it was not clearly established at the time Det. Ridge seized the megaphone that doing so would be a violation of his rights under the First, Fourth or Fourteenth Amendment.

3

Indeed, as discussed in more detail herein, the law was clearly established to the contrary – there was no constitutional violation.

Finally, Mr. Picard has suffered no actual damages, and in these circumstances, should not recover nominal damages and cannot recover attorney's fees. For all of these reasons, Det. Ridge is entitled to judgment as a matter of law dismissing the Second Amended Complaint in its entirety.

**Undisputed Facts**[3]

Det. Ridge relies upon and incorporates by reference his L.R. 56.1 Statement of Material Undisputed Facts (the "Rule 56.1 Statement").

**Argument**

**I.      SUMMARY JUDGMENT STANDARD**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. "For this purpose, 'genuine' means that the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party, and 'material' means that the fact is one that might affect the

---

[3] The City sets forth its statement of facts solely for summary judgment and makes no admission with respect to the facts contained herein.

outcome of the suit under the applicable law." *Mulvihill v. Top-Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir. 2003) (internal citations omitted). The "nonmovant bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" *Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir. 2005) (quoting *Mulvihill,* 335 F.3d at 19).

## II.    DETECTIVE RIDGE DID NOT RETALIATE AGAINST MR. PICARD DUE TO HIS EXERCISE OF FIRST AMENDMENT RIGHTS

A § 1983 claim has two basic elements: "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Det. Ridge does not dispute that he was acting under color of law when he seized the megaphone from Mr. Picard. However, Mr. Picard can offer no facts to establish that Det. Ridge violated his First Amendment rights. "Disobeying police orders connected to public safety while using a megaphone in a manner that cultivates fear and anger in a large crowd is not conduct protected by the First Amendment." *Relf v. Pender*, 2023 WL 349849, at \*5 (D. Mass. Jan. 20, 2023) (citing *Commonwealth v. Marcavage*, 76 Mass. App. Ct. 34, 38-39 (2009))

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation omitted). "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Id*. (internal quotation omitted); *see also Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 283–284 (1977). "When a government actor retaliates against someone for exercising constitutionally protected First Amendment rights, that individual has a cognizable retaliation claim pursuant to §1983." *Alston v. Town of Brookline Massachusetts*, 308 F. Supp. 3d 509, 531

(D. Mass. 2018) (citing *Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 141 (1st Cir. 2016)).  In *Nieves*, the Supreme Court established a new standard for First Amendment retaliatory arrest cases, applying the "no probable cause" threshold standard for retaliatory prosecutions:

> Absent such a showing [of no probable cause], a retaliatory arrest claim fails. But if the plaintiff establishes the absence of probable cause, then the *Mt. Healthy* test governs: The plaintiff must show that the retaliation was a substantial or motivating factor behind the arrest, and, if that showing is made, the defendant can prevail only by showing that the arrest would have been initiated without respect to retaliation.

*Nieves*, 587 U.S. at 404 (internal quotation omitted).  Here, no arrest was made or citation issued - the retaliatory act was taking the megaphone.  If Det. Ridge had probable cause to arrest Mr. Picard or issue him a citation, and rather than take that step, took the lesser step of relieving him of his megaphone to prevent him from engaging in the unlawful activity, the First Amendment retaliation claim should likewise fail.[4] *Cf. Commonwealth v. Skea*, 18 Mass. App. Ct. 685, 689 (1984) (officers seized and destroyed marijuana without arrest and subsequent search deemed constitutional because it was based on probable cause and exigent circumstances).

The undisputed facts do not satisfy the *Nieves* threshold burden.  Det. Ridge had sufficient probable cause to arrest Mr. Picard for at bare minimum, disorderly conduct and disturbing the peace.  *See* M.G.L. c. 272, § 53.  In determining whether he had probable cause, the Court must "view the circumstances from the perspective of a reasonable person in the position of the officer." *Holder v. Town of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009).  "Probable cause requires only a probability that the defendant committed the crime." *Id*. (citing *Hill v. California,* 401 U.S. 797, 804 (1971)).  "The test for probable cause does not require the officers' conclusion to be ironclad,

---

[4] The Supreme Court carved out the *Nieves* exception, in instances where an officer has probable cause to arrest someone exercising First Amendment rights for something for which officers typically do not to make an arrest, such as arresting a police protester for jaywalking.  587 U.S. at 404.  It is inapplicable here, as Det. Ridge elected not to arrest or cite Mr. Picard.

or even highly probable.  Their conclusion that probable cause exists need only be reasonable." *Id*. (internal citation omitted).  "The only relevant facts are those known to the officer." *Id*.

The elements of disturbing the peace are: (1) the individual engaged in conduct most people would find to be unreasonably disruptive, such as "making loud and disturbing noise"  or "tumultuous or offensive conduct" or "threatening, quarreling, fighting, or challenging others to fight" or "uttering personal insults that amount to fighting words, that is, are so offensive that there are inherently likely to provoke an immediate violent reaction"; (2) the conduct was intentional; and (3) the individual's conduct did in fact annoy or disturb at least one person.  *See* Massachusetts District Court Criminal Model Jury Instruction 7.200 (2009); M.G.L. c. 272, § 53; *Commonwealth v. Orlando*, 371 Mass. 732, 733-736 (1977). While the statute applies only to speech that falls outside of the scope of First Amendment protection, it is not a defense that proscribed behavior was accompanied by protected speech.  *See Commonwealth v. Bohmer*, 374 Mass. 368, 373-377 (1974).  An arrest for disorderly conduct of a political protester requires probable cause to believe that an individual: (1) either engaged in fighting or threatening, or engaged in violent or tumultuous behavior; (2) these actions were likely to affect the public; and (3) the individual either intended to cause or recklessly created a risk of public inconvenience, annoyance or alarm.  *See* Massachusetts District Court Criminal Model Jury Instruction 7.160 (2009); M.G.L. c. 272, § 53; *Commonwealth v. Feigenbaum*, 404 Mass. 471 (1989).  The first element of the offense has a second prong making it disorderly conduct where the suspect "created a hazardous or physically offensive condition by an act that served no legitimate purpose."  Political protest is a legitimate purpose.  *Feigenbaum*, 404 Mass. at 475 (blocking public way for political protest).  Creating a hazardous or physically offensive condition for private reasons is both disturbing the peace and disorderly conduct under the statute.  *Finamore v. Miglionico*, 15 F.4th 52, 60 (1st Cir. 2021).

7

Here, the undisputed facts establish that Det. Ridge had more than sufficient probable cause to arrest Mr. Picard for disturbing the peace or disorderly conduct, had he chosen to do so. Det. Ridge had just responded with his unit to break up an encounter between the two opposing protest groups that led to fourteen arrests and at least two injured police officers.[5] Mr. Picard was a counter-protester lampooning the protesters from within their ranks while sarcastically provoking the counter-protesters. Mr. Picard used his megaphone to intentionally disturb everyone at the Men's March through offensive words and conduct likely to provoke an immediate violent reaction given the circumstances. It was reasonable for Det. Ridge to believe that his use of the megaphone constituted "threatening" or "violent and tumultuous behavior." *See, e.g., Marcavage*, 76 Mass. App. Ct. at 38-39 (refusal of street evangelist to stop using megaphone to proselytize during Salem Halloween revelry "tumultuous conduct" and safety risk supporting disorderly conduct conviction and seizure of megaphone). This is reflected in Det. Ridge's words when he explained why he took the megaphone - "***You're inciting a riot.***" Mr. Picard's conduct, in the wake of a violent conflict and while marching among the very protesters he was lampooning, was a disturbance of the peace and disorderly conduct. Finally, the undisputed facts are that Mr. Picard was not there to lampoon as a political protester but rather as a content creator drawing attention to himself on his various social media outlets, including his YouTube page, "The Professional Douche."[6]

Even if Mr. Picard could show that there was no probable cause, the undisputed facts do not satisfy the *Mt. Healthy* test. There are no facts to establish that the content of Mr. Picard's mocking of the Men's March was a substantial or motivating factor behind Det. Ridge's decision to take the megaphone. On the contrary, the only facts to establish Det. Ridge's motive came from

---

[5] Rule 56.1 Statement at ¶¶ 27, 38, 86; Exhibits 8, 9 and 15
[6] Rule 56.1 Statement at ¶ 12, 90

Det. Ridge himself – he told Mr. Picard he was inciting a riot.  Det. Ridge described himself as "middle of the road" on abortion and that the issue was not a motivating factor in any of his actions that day.[7]  Moreover, even if Det. Ridge's views on abortion played a role in his seizure of the megaphone, which they did not, the undisputed facts are that he would have seized it regardless.  Shortly after a violent encounter between the protesters, counter-protesters and police, Det. Ridge told Mr. Picard – ***in the moment*** – that he thought that he was inciting a riot.  Det. Ridge did not prevent Mr. Picard from disseminating his message; he simply prevented him from using the megaphone to do so in the wake of a riot. *Marcavage*, 76 Mass. App. Ct. at 40 (seizure of megaphone supported disorderly conduct conviction where police action "by no means prevented the defendant from disseminating his message; rather, it was directed only at the manner of the defendant's delivery").  In contrast to protests and rallies where police conduct was the heart of the protest, one cannot simply assume that Det. Ridge took Mr. Picard's megaphone because he disagreed with the content of his message.  Count I fails as a matter of law.

III.    **DETECTIVE RIDGE'S TAKING OF MR. PICARD'S MEGAPHONE WAS NOT AN ILLEGAL SEIZURE UNDER THE FOURTH AMENDMENT**

The Fourth Amendment provides that every person has the right to be secure against unreasonable searches and seizures of his or her possessions.  U.S. Const. amend. IV; *see also Commonwealth v. White*, 475 Mass. 583, 587 (2016) (internal quotation omitted).  There is no dispute that Det. Ridge "seized" the megaphone when he grabbed it from Mr. Picard and did not immediately return it to him.[8]  A "seizure" occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Karo*, 468 U.S. 705,

---

[7] Rule 56.1 Statement at ¶ 70.  Det. Ridge provided this information under oath in his answers to interrogatories and responses to requests for admission, as reflected in the Rule 56.1 Statement. Mr. Picard did not depose him.

[8] Undersigned counsel returned the megaphone to Mr. Picard in the early stages of the litigation.

712 (1984). The question is whether the seizure of the megaphone was an "unreasonable" one.

A seizure without a warrant is generally "presumptively unreasonable" unless the officer can show that it falls within a "class of permissible exceptions to the warrant requirement." *White*, 475 Mass at 588. Several exceptions to the warrant requirement are applicable here. First, the "exigent circumstances" doctrine applies – the undisputed facts show "(1) that the search or seizure was supported by 'probable cause,' such that a warrant would have issued had one been sought, and (2) that there 'existed exigent circumstances' that made obtaining a warrant impracticable." *Id*. As discussed above, Det. Ridge had probable cause to believe Mr. Picard was committing a crime when he grabbed the megaphone. With respect to exigent circumstances, as a member of the Youth Violence Strike Force ("YVSF" or the "Gang Unit") Det. Ridge was automatically assigned to Public Order Platoon Two, or "POP 2," a unit designed for riot and crowd control.[9] POP units are "deployed in cases of extreme violence and disruption or when the potential exists for such a situation to develop." It is the last level before full deployment of BPD resources and mutual aid from other agencies.[10] On the day of the Men's March, POP 2 staged at the Boston Common and responded to Kenmore Square in response to an officer in trouble call where they and other units engaged with counter-protesters and cleared the parade route shortly before Det. Ridge's encounter with Mr. Picard.[11] There was no opportunity to obtain a warrant before seizing Mr. Picard's megaphone. *See Skea*, 18 Mass. App. Ct. at 689 ("Obviously, the officers could not have anticipated that this situation would arise and sought a warrant in advance.")

---

[9] Rule 56.1 Statement at ¶¶ 31-32, Exhibit 12
[10] Rule 56.1 Statement at ¶¶ 33-34; Exhibit 25
[11] Rule 56.1 Statement at ¶¶ 35-45. Video of the encounter between police, protesters and counter-protesters can be seen in other BWC footage included with the Rule 56.1 Statement.

The seizure is also valid because Det. Ridge witnessed Mr. Picard committing a crime with it in plain view of all present at the Men's March.  "Under the plain view doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Commonwealth v. Balicki*, 436 Mass. 1, 8 (2002) (internal quotation omitted).  "In the case of contraband and fruits and instrumentalities of crime, the nexus to criminal activity is obvious."[12]  *Id*.  The megaphone was the instrumentality of what Det. Ridge had probable cause to believe was disturbing the peace and disorderly conduct.  "The seizure of property in plain view involves no invasion of privacy and *is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity*."  *Texas v. Brown*, 460 U.S. 730, 741–42 (1983) (emphasis in original and quotation omitted); *see also Skea*, 18 Mass. App. Ct. at 689.

That Det. Ridge took the megaphone without arresting Mr. Picard has no bearing on the outcome. "First, it is clear that the police need not arrest a suspect the moment they obtain probable cause." *Commonwealth v. Washington*, 449 Mass. 476, 486 (2007).  "An officer seeing contraband items, or what reasonably may be thought contraband items, through the window may legitimately seize them." *Skea*, 18 Mass. App. Ct. at 688 (constitutional seizure and destruction of marijuana despite no arrest).  In *Skea*, a warrantless search that discovered diamonds later determined to be stolen was constitutional where it was performed after officers viewed marijuana (then illegal) in plain sight and did not arrest the individuals for the marijuana despite probable cause to do so.  *Id*. at 694.  If officers can conduct a further search based on probable cause and exigent circumstances

---

[12] There is no dispute that the encounter between Det. Ridge and Mr. Picard was mere happenstance. *See Balicki*, 436 Mass. at 9 (under state constitutional law the police must come across the item inadvertently); *cf. See Horton v. California*, 496 U.S. 128, 137 (1990) (abandoning inadvertence).

despite no arrest, they certainly can seize the instrumentality of the crime without making an arrest.

Det. Ridge had probable cause to arrest Mr. Picard and there were exigent circumstances, and thus the seizure of the instrumentality of that crime – the megaphone – was not unreasonable. "It is thus apparent that the [criminal] defendant is contending for a nonsense proposition: that his constitutional rights were violated at the moment when the police decided not to arrest him and instead let him go." *Skea*, 18 Mass. App. Ct. at 695.[13] "We do not believe that either the Federal or the State Constitution forces the police to such a Hobson's choice" – to arrest if they want to search or to simply let the individual go. *Washington*, 449 Mass. at 486 (officers not required to arrest to search if they had probable cause and exigent circumstances). Count II fails.

## IV.    THE SEIZURE OF THE MEGAPHONE DID NOT VIOLATE MR. PICARD'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

Mr. Picard claims that the seizure of the megaphone violated his due process rights under the Fourteenth Amendment. In the first instance, seizures of property are explicitly covered by the Fourth Amendment rather than the Fourteenth Amendment, and thus there is no substantive due process claim. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386,

---

[13] The *Skea* Court recognized that these are rare circumstances. "It is the rare case where the officer searches, finds something incriminating, and, as here, does not follow up with an arrest." 18 Mass. App. Ct. at 687, 697 (policy of not arresting for small amounts of marijuana unless search revealed more serious drugs). "Where contraband is found, an arrest will generally follow. Where it is not, the suspect is either released to go on his way, nothing more being heard of the matter; or, if he is arrested, no issue is later made of the search precisely because it uncovered no contraband or other matter to be offered in evidence." *Id*. at 696. The Appeals Court actually noted that the potential for a subsequent civil suit based on the warrantless search without an arrest weighed in favor of the search being held constitutionally reasonable. *Id*. at 696-697, n. 15.

394 (1989)).  "The Framers considered the matter of pretrial deprivations of liberty [and property] and drafted the Fourth Amendment to address it."  *Id*. at 274.  "We express no view as to whether petitioner's claim would succeed under the Fourth Amendment … we do hold that substantive due process, with its scarce and open-ended guideposts, can afford him no relief."  *Id*. at 275 (internal quotation omitted).  Moreover, Det. Ridge's seizing of the megaphone in these circumstances is not "so egregious as to shock the conscience," a requirement of substantive due process claims. *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 639 (1st Cir. 2013).

Moreover, there was no violation of procedural due process rights here.  The underlying criminal statute is constitutionally sound.  "Due process requires that a criminal statute be sufficiently clear to give notice of the conduct that it prohibits."  *Bohmer*, 374 Mass. at 371 (analyzing M.G.L. c. 272, § 40, which makes it a crime to disturb assemblies of people meeting for a lawful purpose).  "A 'statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'"  *Id*. (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).  "[T]he law of disturbing the peace as defined in that case is neither vague nor overbroad, and consequently does not violate the due process clause of the Fourteenth Amendment to the United States Constitution."  *Orlando*, 371 Mass. at 733 (citing *Commonwealth v. Jarrett*, 359 Mass. 491, 497-498 (1971)).

Neither is the delay in returning the megaphone, assuming there was an obligation to do so, a violation of procedural due process rights.  Due to the chaotic nature of the situation, Det. Ridge could not stop to take Mr. Picard's information, and thus he did not know to whom he should return the megaphone until Mr. Picard sued him.[14]  It was sheer luck that Det. Ridge placed the

---

[14] Rule 56.1 Statement at ¶ 66; Exhibit 11.

megaphone on a cruiser belonging to the YVSF and that it made it back to the YVSF lunch room.[15] And while BPD had possession of the megaphone, the only process Mr. Picard availed himself of was the legal process – he made no attempt to contact BPD to inquire as to whether the megaphone could be returned to him.[16]  Moreover, "[t]here are many instances in which the lawful seizure of property necessarily results in a brief delay before its return. It makes little sense to treat each of those delays as an actionable violation of the Fourth Amendment." *Britton v. Maloney*, 196 F.3d 24, 35–36 (1st Cir. 1999).  The megaphone was returned to Mr. Picard when he travelled to Boston from his home in Connecticut for a hearing on the motion to dismiss in this lawsuit, approximately four months after it was seized.[17]   Count III fails as a matter of law.

## V.    DETECTIVE RIDGE'S SEIZURE OF THE MEGAPHONE WAS NOT A CONTENT-BASED RESTRICTION OF MR. PICARD'S SPEECH

Mr. Picard's most recent claim that the taking of the megaphone was a content-based restriction of his speech is not supported by the undisputed facts.  Mr. Picard bases this claim on Det. Ridge's interrogatory answer where he stated that Mr. Picard's "words *in combination with* the volume of the megaphone were inciting counter-protesters in the wake of a violent encounter with his POP unit."  It was the volume and timing of the words that concerned Det. Ridge, not the words themselves.  "The right of free speech does not encompass the right to cause disruption, and that is particularly true when those claiming protection of the First Amendment cause actual disruption of an event covered by a permit." *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 198 (3d Cir. 2008) (removal of counter-protesters using bullhorns to interfere with a permitted event).  "The principle of content neutrality does not divest police officers of the ability

---

[15] Rule 56.1 Statement at ¶ 87
[16] Rule 56.1 Statement at ¶ 89
[17] Once counsel obtained the megaphone he told Mr. Picard he could collect it at any time.  The parties agreed to turn it over at the hearing on the motion to dismiss.

to enforce valid permits and to ensure that permitted speech is allowed to take place." Det. Ridge did not arrest Mr. Picard or tell him he could not use the words "see what happens when you fuck with us men?" – he took away the megaphone.[18] Mr. Picard was free to continue his speech for the rest of the permitted Men's March, and did so. Det. Ridge's sole concern was preventing further disruptions of the Men's March like the one his POP unit had just been deployed to resolve.

> 1. **When Viewed in Totality, Detective Ridge's Seizure of the Megaphone was Based on Mr. Picard's Conduct and Not the Content of his Speech**

As was the case in *Startzell*, here the "police action was not based on the content of [Mr. Picard's] message but on [his] conduct." 533 F. 3d at 199. "Disobeying police orders connected to public safety while using a megaphone in a manner that cultivates fear and anger in a large crowd is not conduct protected by the First Amendment." *Relf v. Pender*, 2023 WL 349849, at *5 (D. Mass. Jan. 20, 2023). *Marcavage* involved a lawful seizure of a megaphone and arrest for disorderly conduct where an individual refused to cease using a megaphone to proselytize to crowds in Salem during Halloween celebrations. 76 Mass. App. Ct. at 38-39. "It is also significant to note that the police order by no means prevented [Mr. Picard] from disseminating his message; rather, it was directed only at the manner of [Mr. Picard]'s delivery." *Id*. 39-40 (order to cease using a megaphone lawful). Even though "his underlying conduct, particularly dissemination of his religious message, may have enjoyed First Amendment protection" police action "reasonably calculated at ensuring public safety amid potentially dangerous circumstances" – restricting the individual's use of a megaphone - did not violate that right. *Id*. at 40.

---

[18] In footnote 10 of the *Startzell* decision, the Third Circuit acknowledged the general proposition that amplified speech is protected expression, but noted that it has long been recognized that regulation of noise and sound is a government interest, "especially when competing values are threatened." 533 F.3d at 199, n. 10 (citations omitted).

In *Commonwealth v. Manolo M.*, the SJC denied a First Amendment challenge to a conviction for resisting arrest where "[a]fter officers had fallen to the ground in two physical struggles with members of a large crowd that had not dispersed in response to police requests, Frederick was walking in the middle of the street that police were attempting to make passable; he ignored repeated police requests directed at him, in particular, to leave; and he was yelling comments 'enticing' the crowd to remain and become more agitated." 496 Mass. 244, 254 (2025) (adopting the Appeals Court's analysis in *Marcavage*). "[T]he fact that Frederick's conduct was accompanied by criticism of the police does not preclude a reasonable inference from the complaint application, 'viewed in its totality,' that the officer formed a good-faith judgment to arrest Frederick based on his conduct, not his constitutionally protected speech, for an offense such as disorderly conduct." *Id.* at 255. The same is true here, where Det. Ridge restricted the use of the megaphone, not the content of Mr. Picard's speech. Mr. Picard was trying to march alongside the protesters he was lampooning, at one point telling an officer "I'm with them."[19] Mr. Picard was walking in close proximity to the protesters he was satirizing and ignored multiple orders to leave the parade route that the POP unit was trying to clear.[20] That the restricted conduct was accompanied by speech Mr. Picard claims was directed at the police action that day does not change the outcome.[21]

### 2.    Mr. Picard's Speech was not Protected Because it was Directed to Inciting or Producing Imminent Lawless Action, and in the Circumstances, was Likely to Produce Such Action

Even if the seizure of the megaphone was based on content rather than conduct, it was more than reasonable for Det. Ridge to believe that those words satisfied the *Brandenburg* test. Indeed,

---

[19] Rule 56.1 Statement at ¶¶ 50, 53, 78, 83
[20] Rule 56.1 Statement at ¶¶ 13-21, 41-43, 50, 77-79, 83-84
[21] Rule 56.1 Statement at ¶¶ 20, 55

he expressly explained to Mr. Picard in the moments after he took the megaphone that he was "inciting a riot." The First Amendment does not protect speech where it "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *see also United States v. Miselis*, 972 F.3d 518, 535-548 (4th Cir. 2020) (Federal Anti-Riot Act could validly proscribe riot-related activity described by verbs "organize," "incite," "participate in," and "instigate" under *Brandenburg*). There is no question that yelling "see what happens when you fuck with us men?" at counter-protesters through a megaphone while pretending to be with the protesters in the moments after a violent conflict between the counter-protesters and police was directed to inciting additional lawless action by counter-protesters. That the statement was likely to incite imminent lawless action is self-evident – Det. Ridge's unit was only on scene because it had been called out to respond to lawless action that had just ended moments before with several arrests and injured police officers.[22] "Conduct that creates special risks or causes special harms may be prohibited by special rules. … Threatening someone because of her race or religious beliefs may cause particularly severe trauma or touch off a riot … There are legitimate, reasonable, and neutral justifications for such special rules." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 416 (1992) (Stephens, J., concurring).

On its face, Mr. Picard's statement had nothing to do with the subject matter of the march – abortion – other than a reference to the "men" of the Men's March with whom he was pretending to side. In his answers to interrogatories, Det. Ridge stated under oath that based on the content of the statement that caused him to seize the megaphone, he was not even sure on which side of the abortion issue Mr. Picard stood.[23] With the benefit of discovery, Mr. Picard recast the meaning

---

[22] Rule 56.1 Statement at ¶¶ 27, 38, 86, Exhibits 8, 9 and 15.
[23] Rule 56.1 Statement at ¶ 70

17

of his statement as a commentary on the size of the police response, but that is not a plausible interpretation of the words themselves.  The words "see what happens when you fuck with us men?" constitute a taunt intended to incite further violence and unlawful behavior by counter-protesters that moments before had blocked the passage of the Men's March and engaged in a violent confrontation with police, in particular Det. Ridge's POP unit.  In the wake of that conflict, it was certainly "likely" that Picard's words would incite imminent lawless action.  Even assuming that Det. Ridge took the megaphone due to the content of Mr. Picard's speech, that action satisfies the *Brandenburg* test, as there is a compelling government interest for the seizure of the megaphone – the safety of all involved.  Count IV fails as a matter of law.

## VI.    DETECTIVE RIDGE IS ENTITLED TO QUALIFIED IMMUNITY

If the Court were to determine that the seizure of the megaphone violated any of Mr. Picard's constitutional rights, as the analysis in the foregoing sections demonstrates, that law was not "clearly established" at the time of the seizure.  "Qualified immunity renders government officials sued in their official capacities immune to damages claims unless "1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Bannon v. Godin*, 99 F.4th 63, 84 (1st Cir. 2024), *cert. denied*, No. 24-287, 2025 WL 76439 (U.S. Jan. 13, 2025) (internal quotation omitted).  "This is a 'heavy burden' for a plaintiff to meet." *Johnson v. City of Biddeford*, 92 F.4th 367, 375-76 (1st Cir. 2024) (quoting *Estate of Rahim by Rahim v. Doe*, 51 F.4th 402, 410 (1st Cir. 2022)).  The Supreme Court has explained that the qualified immunity that officers enjoy "is intended to protect all but the plainly incompetent or those who knowingly violate the law." *Bannon*, 99 F. 4th at 84-85 (internal quotations omitted); *see also White v. Pauly*, 580 U.S. 73, 79 (2017).

"The plaintiff bears the burden of 'identify[ing] controlling authority or a consensus of persuasive authority sufficient to put the officers on notice that their conduct violated the law.'" *Bannon*, 99 F. 4th at 84-85 (quoting *Rahim*, 51 F.4th at 412). He cannot do so here. *See*, *e.g.*, *Marcavage*, 76 Mass. App. Ct. at 38-39 (lawful seizure of megaphone and arrest for disorderly conduct where individual refused to cease megaphone use to proselytize to crowds in Salem during Halloween celebrations); *Relf*, 2023 WL 349849, at *5 ("Disobeying police orders connected to public safety while using a megaphone in a manner that cultivates fear and anger in a large crowd is not conduct protected by the First Amendment"). Although decided after the seizure of the megaphone here, the SJC's decision in *Manolo M.* confirms that the decision in *Marcavage* continues to be good law. 496 Mass. at 254 (when "viewed in its totality," fact that conduct was accompanied by criticism of police did not preclude reasonable inference that officer formed a good-faith judgment to make an arrest for disorderly conduct based on content and not the constitutionally protected speech).[24]

## VII.    MR. PICARD HAS SUFFERED NO DAMAGES

The undisputed evidence is that Mr. Picard has no actual damages. His only claim for actual damages arises from the deprivation of the megaphone, a megaphone which was returned to him within months after it was confiscated. At the hearing on the motion to dismiss, Mr. Picard stated that his actual damages were speculative, admitting that he was bringing the lawsuit for "the

---

[24] Further supporting qualified immunity is the fact that the City also has an ordinance prohibiting the use of "Loud Amplification Devices" in public ways, *see* Boston, Massachusetts, Code of Ordinances § 16-26.8, among other noise ordinances. *See id*. § 16-26.1 et seq. Det. Ridge stated in his answers to interrogatories that while he did not intend to arrest or cite Mr. Picard, he was aware of the noise ordinances. Rule 56.1 Statement at ¶ 63 and 64.

19

principle." The megaphone was returned to Mr. Picard and there are no facts to dispute that the loss of the megaphone for a period of months has little or no value.

"[I]n a § 1983 action, Supreme Court precedent 'obligates a court to award nominal damages when a plaintiff established the violation of his right to procedural due process but cannot prove actual injury.'" *Anderson ex rel. Dowd v. City of Boston*, 375 F.3d 71, 94 (1st Cir. 2004) (quoting *Farrar v. Hobby*, 506 U.S. 103, 115 (1992). However, "where a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it is undisputed that the government would have made the same decision regardless, there is no cognizable injury warranting relief under § 1983." *Texas v. Lesage,* 528 U.S. 18, 21 (1999). "Without a deprivation of constitutional rights, liability will not attach, and damages – nominal, compensatory, or otherwise – cannot be imposed." *Anderson*, 375 F.3d at 95. As set forth herein, the undisputed facts show that Det. Ridge would have seized the megaphone under the circumstances regardless of the content of Mr. Picard's speech and Det. Ridge's reaction to it. As such, nominal damages are not an appropriate type of relief for Mr. Picard's claims.[25]

## Conclusion

For the reasons set forth herein, Det. Ridge respectfully requests that this Honorable Court grant his motion, enter judgment in his favor on all counts of Mr. Picard's complaint, and grant such other and further relief as it deems just and proper.

---

[25] Had Mr. Picard been represented by counsel, he would not have been entitled to attorney's fees. "Whatever the constitutional basis for substantive liability, damages awarded in a § 1983 action must always be designed to *compensate injuries* caused by the constitutional deprivation." *Farrar*, 506 U.S. at 115 (quotations omitted and emphasis in original). "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id*.

Respectfully submitted,

**STEPHEN J. RIDGE,**
By his attorney:

MICHAEL FIRESTONE
Corporation Counsel


/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr. (BBO#644331)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA  02201
(617) 635-4045
edward.whitesell@boston.gov

Dated:  March 12, 2026


### Certificate of Service

I, Edward F. Whitesell, Jr., hereby certify that on March 12, 2026, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and by first class mail to all non-registered participants.


/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr.