**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**Michael Picard**,

*Plaintiff,*

*v.*                                                    Case no.: 1:24-cv-12891-WGY

**Stephen J. Ridge**,

*Defendant.*


## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT


### I.    INTRODUCTION

This case arises from a police officer seizing a megaphone from a political satirist in the middle of a public protest without warning, without an arrest, without a citation, and without witnessing the Plaintiff ("Mr. Picard") commit any crime. The officer kept the megaphone for approximately four months before returning it only after this lawsuit was filed.

Defendant Detective Stephen Ridge now seeks summary judgment, arguing that he had probable cause, that the seizure was lawful, that Mr. Picard's speech was unprotected incitement, that there was no due process violation, and that he is entitled to qualified immunity. None of these arguments withstand scrutiny when the evidence is viewed in the light most favorable to Mr. Picard, as required at the summary judgment stage.

The record contains numerous genuine disputes of material fact, including whether Mr. Picard's statements constituted satire or incitement, whether the seizure of the megaphone was based on the content of Mr. Picard's speech or the alleged volume of the megaphone, whether Defendant's actions were motivated by Mr. Picard's protected speech, whether Mr. Picard was engaged in any unlawful conduct or whether Defendant had probable cause to seize the megaphone, whether exigent circumstances existed, and whether Mr. Picard was deprived of property without due process. These disputed facts are material because they directly bear on Mr. Picard's First Amendment, Fourth Amendment, and Fourteenth Amendment claims,

Because genuine disputes of material fact exist and because a reasonable jury could find that Defendant violated Mr. Picard's First, Fourth, and Fourteenth Amendment rights, Defendant's motion for summary judgment must be denied.

## II.    FACTS

Mr. Picard relies upon and incorporates by reference his responses to the Defendant's D. Mass. LR. 56.1 Statement of Material Undisputed Facts, as well as Mr. Picard's D. Mass. LR. 56.1 Statement of Additional Material Facts.

## III.    LEGAL STANDARD

Summary judgment is only to be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. A material fact is one that "might affect the outcome of the suit under the governing law." **Anderson** v. **Liberty Lobby, Inc.**, *477 U.S. 242, 248 (1986)*. A genuine

2

dispute of material fact exists where the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." **Id**. The Court must view the record in the light most favorable to the nonmoving party and make all reasonable inferences in that party's favor. **O'Connor** v. **Steeves**, *994 F.2d 905, 907 (1st Cir. 1993)*.

## IV.    ARGUMENTS

### A.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON Mr. Picard'S FIRST AMENDMENT RETALIATION CLAIM.

First, Defendant argues that he is entitled to summary judgment on Mr. Picard's First Amendment retaliation claim on the ground that the undisputed facts establish probable cause to arrest Mr. Picard for disturbing the peace and disorderly conduct under **M.G.L. c. 272, § 53**. Second, Defendant argues that even absent probable cause, the undisputed facts fail to establish that Defendant acted with a retaliatory motive.

To establish a First Amendment retaliation claim, Mr. Picard must show that (1) he engaged in constitutionally protected speech; (2) the defendant took an adverse action against him; and (3) the protected speech was a substantial or motivating factor in the adverse action. *See* **Mt. Healthy City Sch. Dist. Bd. of Educ.** v. **Doyle**, *429 U.S. 274, 287 (1977)*; **Nieves-Villanueva** v. **Soto-Rivera**, *133 F.3d 92, 98 (1st Cir. 1997)*; **Díaz-Bigio** v. **Santini**, *652 F.3d 45, 52 (1st Cir. 2011)*.

Defendant's probable cause argument does not entitle him to summary judgment. The Supreme Court's "no-probable-cause" requirement applies in the context of retaliatory prosecutions and arrests, where causation concerns arise from

the involvement of independent decisionmakers, like prosecutors, or the ubiquity of discretionary enforcement. See **Hartman** *v.* **Moore**, *547 U.S. 250 (2006)*; **Nieves** *v.* **Bartlett**, *139 S. Ct. 1715 (2019)*. It is undisputed that Mr. Picard was neither arrested nor prosecuted. **Def.'s SOF ¶ 63; Pl.'s Resp. To Def.'s SOF ¶ 63; Pl.'s Add'l SOF ¶ 22; Pl.'s Ex. 1 at 6(a).**

This case instead involves a warrantless seizure of Mr. Picard's property by the same officer alleged to have acted with retaliatory animus. Unlike in *Hartman* and *Nieves*, there is no intervening decisionmaker and no comparable causation gap. In any event, even if the Court were to decide that probable cause is required, summary judgment would still be inappropriate because genuine disputes of material fact exist as to whether probable cause was present at the time of the seizure.

Defendant next argues that Mr. Picard cannot show that his speech was a substantial or motivating factor in the seizure. The record, however, contains evidence from which a reasonable jury could find otherwise. Viewing the facts in the light most favorable to Mr. Picard, the Defendant turned toward Mr. Picard upon hearing his statement and immediately seized the megaphone. **Def.'s SOF ¶¶ 57, 59; Pl.'s Resp. To Def.'s SOF ¶¶ 57, 59; Pl.'s Add'l SOF ¶ 11**; **Pl.'s Ex. 2 at 18:22 to 18:30**; **Pl.'s Ex. 3 at 4:24 to 4:42**. When asked to justify the seizure, Defendant stated, "you're inciting a riot." **Def.'s SOF ¶ 65; Pl.'s Resp. To Def.'s SOF ¶¶ 65; Pl.'s Add'l SOF ¶ 12**; **Pl.'s Ex. 3 at 4:46 to 4:52**. Furthermore, the Defendant was concerned about how the crowd might react. **Pl.'s Add'l SOF ¶ 31; Pl.'s Ex. 4 at 8**. A jury could reasonably interpret this as reflecting a content-based judgment about Mr. Picard's speech. See **Forsyth**

**County** v. **Nationalist Movement**, *505 U.S. 123, 134 (1992)*. Mr. Picard's own testimony confirms that his speech was satirical and expressive, not a call to action—he testified that his content is a "bit" intended to "satiriz[e] beliefs and creat[e] social and political awareness." **Pl.'s Ex. 10 at 188:16-17**. The facts further support that the Defendant was motivated by Mr. Picard's speech when he invoked "Mr. Picard's words" as a reason for the seizure. **Pl.'s Add'l SOF ¶ 31**; **Pl.'s Ex. 1 at 6(a).**

Defendant's alternative, post hoc justification—that the seizure was based on volume and timing—is also disputed. The record contains evidence that Defendant did not warn Mr. Picard about volume, **Pl.'s Add'l SOF ¶ 17**; **Pl.'s Ex. 5 at 6**; **Pl.'s Ex. 3 at 4:36 to 5:02**, did not reference volume at the time of the seizure, **Pl.'s Add'l SOF ¶¶ 14-19**; **Pl.'s Ex. 5 at 6**; **Pl.'s Ex. 3 at 4:36 to 5:02**, did not measure or assess decibel levels, **Pl.'s Add'l SOF ¶¶ 14-15**; **Pl.'s Ex. 4 at 7**; **Pl.'s Ex. 3 at 4:36 to 5:02** , did not check the volume dial on the megaphone, **Pl.'s Add'l SOF ¶ 16**; **Pl.'s Ex. 5 at 8**; **Pl.'s Ex. 3 at 4:36 to 5:02**, and did not attempt any less restrictive alternative. **Pl.'s Add'l SOF ¶¶ 14-19; Pl.'s Ex. 3 at 4:36 to 5:02**. A reasonable jury could therefore conclude that the proffered volume and timing rationale is not the true reason for the seizure.

At minimum, genuine disputes of material fact exist as to (1) whether Mr. Picard's speech was protected or constituted incitement, and (2) whether the seizure was motivated by the content of Mr. Picard's speech or some purported concern about volume and timing and, if the Court should decide that the "no-probable-cause" rule applies in this case, (3) whether probable cause existed. These disputes are for a jury

to resolve, not the Court at summary judgment. Accordingly, Defendant is not entitled to summary judgment on Mr. Picard's First Amendment retaliation claim.

**B.  DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON Mr. Picard'S FOURTH AMENDMENT CLAIM.**

Defendant argues that he is entitled to summary judgment on Mr. Picard's Fourth Amendment claim on the grounds that probable cause and exigent circumstances existed to arrest Mr. Picard for disturbing the peace or disorderly conduct and to seize the megaphone.

**1.  PROBABLE CAUSE**

Defendant is not entitled to summary judgment on Mr. Picard's Fourth Amendment claim because, viewing the record in the light most favorable to Mr. Picard, a reasonable jury could conclude that probable cause was lacking at the time of the seizure. To establish probable cause for disturbing the peace or disorderly conduct under M.G.L. c. 272, § 53, Defendant must identify specific, contemporaneous facts showing that Mr. Picard engaged in fighting, threatening, violent, or physically offensive conduct creating a hazardous condition, and that such conduct lacked any legitimate purpose. **Finamore** v. **Miglionico**, *15 F.4th 52, 60 (1st Cir. 2021)*.

Probable cause must be assessed based solely on the facts known to the officer at the time—not on post hoc rationalizations. **Devenpeck** v. **Alford**, *543 U.S. 146, 152 (2004)*. Here, the material facts known to Defendant at the moment of the seizure, taken in Mr. Picard's favor, include: the Defendant had responded to an earlier clash between opposing groups, **Def.'s SOF ¶ 31; Pl.'s Resp. To Def.'s SOF ¶ 31**, the clash had already been dispersed, **Def.'s SOF ¶ 57; Pl.'s Resp. To Def.'s SOF ¶¶ 57, 59**; the

Men's March was proceeding, **Pl.'s Add'l SOF ¶ 7**; **Pl.'s Ex. 12 at 01:50:00 to 01:51:00**, the opposing groups were marching peacefully, **Id.**,

Mr. Picard was walking within the march, **Pl.'s Ex. 3 at 4:20 to 4:26**, Mr. Picard made a single statement over a megaphone, **Pl.'s Add'l SOF ¶ 12**; **Def.'s SOF ¶ 54**; **Pl.'s Resp. To Def.'s SOF ¶ 54**; **Pl.'s Ex. 3 at 4:26 to 4:31**, the Defendant did not understand which side Mr. Picard was on, **Pl.'s Add'l SOF ¶ 30**; **Pl.'s Ex. 1 at 11**, the crowd remained peaceful, **Pl.'s Add'l SOF ¶ 9**; **Def.'s SOF ¶¶ 56, 61; Pl.'s Resp. To Def.'s SOF ¶¶ 56, 61**; **Pl.'s Ex. 3 at 4:26 to 5:02**, Mr. Picard did not cause a riot or engage in violence, **Pl.'s Add'l SOF ¶ 20**; **Def.'s SOF ¶ 71**; **Pl.'s Resp. To Def.'s SOF ¶ 71**; **Pl.'s Ex. 4 at 8**; **Pl.'s Ex. 10 at 165:20-166:3**, and the protestors did not engage in violence, or threaten, Mr. Picard. **Pl.'s Add'l SOF ¶ 21**; **Def.'s SOF ¶ 61; Pl.'s Resp. To Def.'s SOF 61**; **Pl.'s Ex. 4 at 5**; **Pl.'s Ex. 10 at 165:20-166:3**.

On this record, a reasonable jury could find that these facts do not establish probable cause. First, Defendant relies heavily on a prior clash between other individuals, but probable cause must be particularized to the person seized. **Ybarra** *v.* **Illinois**, *444 U.S. 85, 91 (1979)*. There is no evidence that Mr. Picard participated in, caused, or was even connected to that earlier encounter. The mere presence of prior disorder, without individualized facts linking Mr. Picard to it, cannot establish probable cause as a matter of law. Critically, there is no evidence that Defendant issued any dispersal order to Mr. Picard or that Mr. Picard refused to comply with any such order.

**Pl.'s Add'l SOF ¶¶ 4-6**; **Def.'s Ex. 11 Pg. 1, ¶ 1**; **Pl.'s Ex. 6 at 14:10 to 14:30**; **Pl.'s Ex. 3 at 2:25 to 2:30**.

Second, Defendant's own admission that Mr. Picard's statement "did not make it clear which side of the issue [he] was on," **Pl.'s Add'l SOF ¶ 30**; **Pl.'s Ex. 1 at 11**, creates, at minimum, a genuine dispute of material fact as to whether the statement could reasonably be interpreted as criminal. Probable cause requires "reasonably trustworthy information" sufficient to warrant a prudent person in believing an offense has been committed. **Beck** v. **Ohio**, *379 U.S. 89, 91 (1964)*. Ambiguous speech— particularly where the officer concedes he did not understand its meaning—does not satisfy that standard and, at most, gives rise to "mere suspicion," which is insufficient. **District of Columbia** v. **Wesby**, *583 U.S. 48, 57 (2018)*. Mr. Picard's testimony further confirms that his speech was not intended to provoke violence, testifying that he has "never in any of [his] videos engaged in anything physical" and that nothing he has done has led to a fight. **Pl.'s Ex. 10 at 186:7-8**, **185: 23-24**. A reasonable jury could therefore conclude that Defendant lacked a sufficient factual basis to interpret Mr. Picard's speech as incitement or disorderly conduct.

Third, the undisputed absence of any imminent or violent reaction further undermines probable cause. Incitement requires advocacy directed to producing imminent lawless action and likely to produce such action. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). Here, the evidence, viewed in Mr. Picard's favor, shows that the crowd remained peaceful, **Pl.'s Add'l SOF ¶ 9**; **Def.'s SOF ¶¶ 56, 61; Pl.'s Resp. To Def.'s SOF ¶¶ 56, 61**; **Pl.'s Ex. 3 at 4:26 to 5:02**, the march continued, **Id**, and no

violence followed Mr. Picard's statement. **Id**. Perhaps to be misleading, Defendant's Statement of Facts asserts that Mr. Picard "bumped into" a member of the Men's March. **Pl.'s Resp. To Def.'s SOF ¶ 82**. Police body camera footage, however, unequivocally shows the opposite: the member of the Men's March bumped into Mr. Picard, pushed him, and then falsely accused Mr. Picard of hitting him. **Pl.'s Ex. 6 at 22:20 to 22:28**; **Pl.'s Ex. 7 at 00:00 to 00:23 (same footage, enlarged and slowed)**. These facts permit a reasonable inference that no imminent threat existed and that Mr. Picard's speech was protected rather than criminal.

Fourth, Defendant improperly relies on information he learned after the seizure to justify his actions. Although Defendant now characterizes Mr. Picard as a "counter-protester," **Def.'s Mem. Supp. Mot. Summ. J. at 8**, who was "lampooning" or "provoking" others, **Id.**, he admits that at the time of the seizure he did not know who Mr. Picard was, **Pl.'s Add'l SOF ¶ 24**; **Pl.'s Ex. 5 at 10**, what his message was or what his intent might have been. **Pl.'s Add'l SOF ¶ 30**; **Pl.'s Ex. 1 at 11**. Such after-the-fact characterizations cannot retroactively establish probable cause. **Devenpeck**, 543 U.S. at 152. At minimum, this discrepancy creates a triable issue as to what Defendant actually knew and relied upon at the time.

Finally, a reasonable jury could find that Mr. Picard's conduct served a legitimate expressive purpose. Political speech at a public demonstration lies "at the heart of the First Amendment." **Snyder** v. **Phelps**, 562 U.S. 443, 451–52 (2011). Unlike private, non-expressive conduct at issue in **Finamore** v. **Miglionico**, *15 F.4th 52, 60 (1st Cir. 2021)*, such as attempting to enforce perceived property rights by fencing off a road, Mr.

Picard's speech occurred in a public protest setting and was inherently expressive. Under Massachusetts law, such expression cannot be deemed disorderly absent additional unlawful conduct, which Defendant did not observe.

In sum, the record contains multiple genuine disputes of material fact—including what Defendant understood, whether Mr. Picard's speech could reasonably be interpreted as incitement, and whether any imminent threat existed—that preclude summary judgment. Accordingly, Defendant is not entitled to judgment as a matter of law on Mr. Picard's Fourth Amendment claim.

## 2.  **EXIGENT CIRCUMSTANCES**

Defendant is not entitled to summary judgment on the basis of exigent circumstances because, viewing the evidence in the light most favorable to Mr. Picard, a reasonable jury could conclude that no exigency existed at the time of the seizure. Warrantless seizures are permissible only where there is a compelling and immediate need for official action, and such action must be "strictly circumscribed by the exigencies which justify its initiation." **Mincey** v. **Arizona**, *437 U.S. 385, 393 (1978)*. Exigent circumstances are evaluated based on the totality of the circumstances and must be grounded in a particularized, case-specific need for immediate action—not generalized concerns. **Missouri** v. **McNeely**, *569 U.S. 141, 149 (2013)*. Once any emergency has dissipated, the justification for a warrantless seizure ends. **Michigan** v. **Tyler**, *436 U.S. 499, 509–10 (1978)*.

Here, the record viewed in Mr. Picard's favor, does not establish any immediate threat requiring prompt intervention. The march was proceeding, **Pl.'s Add'l SOF ¶ 7**;

**Pl.'s Ex. 12 at 01:50:00 to 01:51:00**, the opposing groups remained peaceful after Mr. Picard's statement, **Pl.'s Add'l SOF ¶ 9**; **Def.'s SOF ¶¶ 56, 61**; **Pl.'s Resp. To Def.'s SOF ¶¶ 56, 61**; **Pl.'s Ex. 3 at 4:26 to 5:02**, Mr. Picard did not cause a riot or engage in violence, **Pl.'s Add'l SOF ¶¶ 20-21**; **Def.'s SOF ¶ 71**; **Pl.'s Resp. To Def.'s SOF ¶ 71**; **Pl.'s Ex. 4 at 8**; **Pl.'s Ex. 5 at 17**; **Pl.'s Ex. 10 at 165:20-166:3**, and no one was violent or threatened Mr. Picard. **Def.'s SOF ¶ 61**; **Pl.'s Resp. To Def.'s SOF 61**; **Pl.'s Ex. 4 at 5; Pl.'s Ex. 5 at 17**; **Pl.'s Ex. 10 at 165:20-166:3**. Defendant further did not arrest or Mr. Picard. **Def.'s SOF ¶ 63; Pl.'s Resp. To Def.'s SOF ¶ 63; Pl.'s Add'l SOF ¶ 22; Pl.'s Ex. 1 at 6(a), 6(d)**. These facts permit a reasonable inference that no ongoing emergency or imminent danger existed at the time of the seizure. See *United States v. Adams*, 621 F.2d 41, 44 (1st Cir. 1980) (exigency requires a need for "immediate action").

The earlier disturbance between the two opposing groups cannot establish exigency as a matter of law. Exigent circumstances must be particularized to the situation confronting the officer at the time of the seizure. **McNeely**, 569 U.S. at 149. A prior incident that has already been contained cannot, without more, justify a subsequent warrantless seizure where the scene has stabilized. **Tyler**, 436 U.S. at 509–10. At minimum, whether any emergency persisted presents a genuine dispute of material fact.

Furthermore, the Defendant was not providing emergency assistance, **Michigan** v. **Fisher**, 558 U.S. 45, 47-48, 130 S. Ct. 546, 175 L. Ed. 2d 410 (2009), engaged in hot pursuit, **United States** v. **Santana**, 427 U.S. 38, 42-43, 96 S. Ct. 2406, 49 L. Ed. 2d

11

300 (1976), or entering a burning building, **Michigan** v. **Tyler**, 436 U.S. 499, 509-510, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978).

Finally, the plain view doctrine does not independently justify the seizure absent exigent circumstances. While officers may seize contraband in plain view, the item must be inherently illegal or immediately recognizable as such. *Texas v. Brown*, 460 U.S. 730, 741–42 (1983). A megaphone is neither contraband nor inherently incriminating. Unlike the readily destructible narcotics at issue in **Commonwealth** v. **Skea**, 18 Mass. App. Ct. 685, 689 (1984), there was no realistic risk of imminent destruction of evidence here. A megaphone cannot be flushed down the toilet or thrown down a storm drain in the same way marijuana can. Accordingly, a reasonable jury could find that no exigency justified the warrantless seizure.

Because the record contains genuine disputes of material fact as to whether any immediate threat existed and whether exigent circumstances justified the seizure, summary judgment must be denied on this ground.

### C. <u>DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON Mr. Picard'S FOURTEENTH AMENDMENT CLAIM.</u>

Defendant is not entitled to summary judgment on Mr. Picard's Fourteenth Amendment claim because, viewing the evidence in the light most favorable to Mr. Picard, a reasonable jury could find that Mr. Picard was deprived of his property without constitutionally adequate process. Although the initial seizure of property is governed by the Fourth Amendment, the continued retention of that property without

adequate procedural safeguards is analyzed under the Due Process Clause. **Albright** *v.* **Oliver**, *510 U.S. 266, 273 (1994)*; **City of West Covina** *v.* **Perkins**, *525 U.S. 234, 240 (1999)*; **Lee** *v.* **City of Chicago**, *330 F.3d 456, 466 (7th Cir. 2003)*.

To establish a procedural due process violation, a Mr. Picard must show (1) a protected property interest, (2) a deprivation of that interest, and (3) the absence of constitutionally adequate process. **Logan** *v.* **Zimmerman Brush Co.**, *455 U.S. 422, 428 (1982)*; **Mathews** *v.* **Eldridge**, *424 U.S. 319, 332–33 (1976)*; **González-Droz** *v.* **González-Colón**, *660 F.3d 1, 13 (1st Cir. 2011)*. On this record, a reasonable jury could find all three elements satisfied.

First, it is undisputed that Mr. Picard had a protected property interest in his megaphone. **Pl.'s Add'l SOF ¶ 3; Pl.'s Ex. 8;** . Second, Defendant seized the megaphone and deprived Mr. Picard of its possession and use for an extended period, constituting a deprivation of property. **Pl.'s Add'l SOF ¶¶ 33-36; Def.'s SOF ¶¶ 59, 91; Pl.'s Resp. To Def.'s SOF ¶¶ 59, 91**; **Pl.'s Ex. 9**.

Third, a reasonable jury could conclude that no constitutionally adequate process was provided. The record, viewed in Mr. Picard's favor, shows that Defendant did not identify Mr. Picard, **Pl.'s Add'l SOF ¶ 29; Pl.'s Ex. 5 at 10; Pl.'s Ex. 3 at 4:24 to 5:02**, did not issue a property receipt or any other documentation, **Pl.'s Add'l SOF ¶ 32; Pl.'s Ex. 5 at 9; Pl.'s Ex. 3 at 4:24 to 5:02**, did not identify himself or what unit he worked in or what precinct he worked out of, did not inform Mr. Picard where the megaphone would be held or provide any mechanism for its recovery. **Pl.'s Add'l SOF**

13

¶ 26; **Pl.'s Ex. 3 at 4:26 to 5:02**. These facts permit a finding that Mr. Picard was given no meaningful notice or opportunity to reclaim his property. **Pl.'s Add'l SOF ¶ 35**; **Pl.'s Ex. 5 at 5**.

Defendant's argument is that Mr. Picard could have contacted the Boston Police Department. Even if Mr. Picard had contacted the Boston Police Department, there was no record of the seizure. **Pl.'s Add'l SOF ¶¶ 27-28, 36**; **Pl.'s Ex. 5 at 5**; **Pl.'s Ex. 14 at 6; Pl.'s Ex. 13 at 16; Pl.'s Ex. 5 at 9; Pl.'s Ex. 10 at 168:9-14.** This argument does not avail the Defendant because due process requires the government to provide notice sufficient to enable recovery of seized property; it does not permit the government to withhold that information and place the burden on the property owner to locate it. **City of West Covina**, *525 U.S. at 240*. Moreover, the record supports a reasonable inference that no meaningful recovery process existed at the time, as the megaphone was not logged into evidence until after this litigation was initiated. **Pl.'s Add'l SOF ¶ 27**; **Pl.'s Ex. 5 at 5**.

At minimum, these facts create genuine disputes of material fact as to whether Mr. Picard was provided constitutionally adequate notice and a meaningful opportunity to recover his property. Accordingly, summary judgment must be denied on Mr. Picard's Fourteenth Amendment claim.

      D.  **DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ON Mr. Picard'S CONTENT-BASED FIRST AMENDMENT CLAIM.**

Defendant is not entitled to summary judgment on Mr. Picard's content-based First Amendment claim because, viewing the evidence in the light most favorable to Mr. Picard, a reasonable jury could conclude that the seizure was based on the content of Mr. Picard's speech and that the speech was protected.

First, the record permits a reasonable inference that Defendant acted based on the content of Mr. Picard's speech rather than content-neutral factors like volume and timing. Defendant's contemporaneous statement—"you're inciting a riot"—reflects an assessment of the meaning and effect of Mr. Picard's words and the listener's reaction, not merely their volume or timing. **Pl.'s Add'l SOF ¶ 12**; **Def.'s SOF ¶ 65; Pl.'s Resp. To Def.'s SOF ¶ 65**; **Pl.'s Ex. 3 at 4:49 to 4:52**. Although Defendant now asserts that the seizure was justified by content-neutral considerations, **Pl.'s Resp. To Def.'s SOF ¶ 69,** the record, viewed in Mr. Picard's favor, shows that Defendant did not warn Mr. Picard about volume, **Pl.'s Add'l SOF ¶ 17**; **Pl.'s Ex. 5 at 6**, did not reference the volume or a noise ordinance, **Pl.'s Add'l SOF ¶¶ 14-19**; **Pl.'s Ex. 5 at 6**; **Pl.'s Ex. 3 at 4:26 to 5:02**, did not measure or assess sound levels, **Pl.'s Add'l SOF ¶¶ 14-15**; **Pl.'s Ex. 4 at 7; Pl.'s Ex. 3 at 4:26 to 5:02**, did not check the volume dial on the megaphone, **Pl.'s Add'l SOF ¶ 16**; **Pl.'s Ex. 5 at 8; Pl.'s Ex. 3 at 4:38 to 5:02**, and did not take any steps consistent with regulating volume rather than speech. **Pl.'s Add'l SOF ¶¶ 14-19; Pl.'s Ex. 3 at 4:38 to 5:02**. A reasonable jury could therefore find that these asserted justifications are post hoc and that the actual basis for the seizure was the content of Mr. Picard's expression.

15

The discrepancy between Defendant's contemporaneous explanation and his later characterizations creates a genuine dispute of material fact as to Defendant's motive. A jury could credit Defendant's statement at the scene over his after-the-fact explanations and conclude that the seizure was content-based.

Defendant's reliance on cases involving regulation of conduct does not warrant summary judgment. In **Startzell** v. **City of Philadelphia**, *533 F.3d 183, 198 (3d Cir. 2008)*, and **Commonwealth** v. **Marcavage**, *76 Mass. App. Ct. 34, 38–39 (2009)*, the challenged actions were directed at conduct—such as interference with a permitted event or refusal to comply with police orders to cease using megaphone—not the content of speech. Here, by contrast, the record, viewed in Mr. Picard's favor, contains no evidence that Mr. Picard blocked access, interfered with a permitted event, or disobeyed police orders. To the contrary, Mr. Picard complied with officer instructions. **Pl.'s Ex. 3 at 4:30 to 4:40**. A reasonable jury could therefore conclude that Defendant's actions were directed at Mr. Picard's speech, not his conduct.

Second, a reasonable jury could find that Mr. Picard's speech constituted satire. Under **Brandenburg** v. **Ohio**, *395 U.S. 444, 447 (1969)*, speech is unprotected only if it is directed to inciting imminent lawless action and is likely to produce such action. The record, viewed in Mr. Picard's favor, shows that the crowd remained peaceful, **Pl.'s Add'l SOF ¶ 9**; **Pl.'s Ex. 3 at 4:26 to 5:02**, that Defendant did not observe Mr. Picard engage in or provoke violence, **Pl.'s Add'l SOF ¶ 21**; **Def.'s SOF ¶ 71**; **Pl.'s Resp. To Def.'s SOF ¶ 71**; **Pl.'s Ex. 4 at 8**; **Pl.'s Ex. 10 at 165:20-166:3**, and that no imminent lawless action occurred following Mr. Picard's statement. **Pl.'s Add'l SOF ¶ 9**; **Pl.'s Ex.**

16

**3 at 4:26 to 5:02**. Indeed, if even Defense Counsel recognized Mr. Picard's speech as satire, **Pl.'s Add'l SOF ¶ 32**; **Pl.'s Ex. 10 at 155:4-9**, a reasonable jury could reach the same conclusion.

Whether Defendant was motivated by the content of Mr. Picard's speech or by purportedly content-neutral considerations such as volume or timing, and whether Mr. Picard's speech was satire or incitement, present genuine disputes of material fact for a jury to resolve. Accordingly, summary judgment must be denied on Mr. Picard's content-based First Amendment claim.

### E.  QUALIFIED IMMUNITY DOES NOT WARRANT SUMMARY JUDGMENT.

Qualified immunity protects officials only where (1) no constitutional violation occurred, or (2) the right was not clearly established at the time. See **Pearson** v. **Callahan**, *555 U.S. 223, 232 (2009)*; **Ashcroft** v. **al-Kidd**, *563 U.S. 731, 735 (2011)*. At summary judgment, where the facts are disputed, the Court must view the record in the light most favorable to Mr. Picard. **Tolan** v. **Cotton**, 572 U.S. 650, 657 (2014). Here, genuine disputes of material fact preclude qualified immunity on each claim.

#### 1.  QUALIFIED IMMUNITY SHOULD BE DENIED ON THE FIRST AMENDMENT RETALIATION CLAIM.

A reasonable jury could find that Defendant seized Mr. Picard's megaphone in retaliation for protected speech. The First Amendment has long prohibited government officials from taking adverse action against individuals because of their speech. See Nieves v. Bartlett, 587 U.S. 391, 398 (2019); Mt. Healthy City School District Board of

Education v. Doyle, 429 U.S. 274, 287 (1977). The First Circuit likewise recognizes that retaliation for protected expression violates clearly established law. See Najas Realty, LLC v. Seekonk Water District, 821 F.3d 134, 141 (1st Cir. 2016).

Moreover, the right to amplify speech through devices such as megaphones is itself protected. "Loud-speakers are … indispensable instruments of effective public speech." **Saia** v. **New York**, 334 U.S. 558, 561 (1948). A reasonable officer would therefore understand that seizing a megaphone immediately after protected expression —while stating "you're inciting a riot"—implicates core First Amendment protections.

Here, the record supports a finding that Mr. Picard engaged in core political speech and that Defendant seized the megaphone immediately after Mr. Picard spoke, stating "you're inciting a riot." A reasonable jury could conclude that Mr. Picard's speech was a substantial or motivating factor in the seizure. Moreover, there is, at minimum, a genuine dispute as to whether probable cause existed, which precludes summary judgment under Nieves. Because the unlawfulness of retaliating against protected speech was clearly established, qualified immunity must be denied.

### 2. **QUALIFIED IMMUNITY SHOULD BE DENIED ON THE FOURTH AMENDMENT CLAIM.**

The Fourth Amendment prohibits unreasonable seizures of property. **U.S. Const. amend. IV**. A warrantless seizure is presumptively unreasonable absent probable cause and exigent circumstances. See **United States** v. **Place**, 462 U.S. 696, 701 (1983); **United States** v. **Almonte**, *952 F.2d 20, 22 (1st Cir. 1991)*.

18

Here, a reasonable jury could find that Defendant lacked probable cause to believe Mr. Picard committed disorderly conduct or disturbing the peace. The record reflects that the crowd was peaceful, that Defendant did not observe Mr. Picard commit or incite violence, and that no imminent threat existed at the time of the seizure. These facts sharply undermine any claim of probable cause or exigency.

It is clearly established that officers may not seize property without probable cause or exigent circumstances. See Groh v. Ramirez, 540 U.S. 551, 559 (2004). Because the existence of probable cause and exigent circumstances is genuinely disputed, Defendant is not entitled to qualified immunity at this stage.

### 3.  QUALIFIED IMMUNITY SHOULD BE DENIED ON THE FOURTEENTH AMENDMENT CLAIM.

The Due Process Clause requires that the government provide notice and a meaningful opportunity to be heard when depriving an individual of property. See Mathews v. Eldridge, 424 U.S. 319, 333 (1976). The Supreme Court has further held that, following a seizure, the government must provide notice sufficient to allow recovery of property. See **City of West Covina** v. **Perkins**, 525 U.S. 234, 240 (1999).

Here, a reasonable jury could find that Defendant provided no process whatsoever. Defendant did not identify Mr. Picard, did not provide a receipt, did not explain how to recover the megaphone, and did not initiate its return until after litigation began. The megaphone was retained for months without any meaningful procedure.

19

It was clearly established that the government must provide adequate notice and process when depriving an individual of property. Because the record supports a finding that no such process was provided, qualified immunity must be denied.

### 4. **QUALIFIED IMMUNITY SHOULD BE DENIED ON THE CONTENT-BASED FIRST AMENDMENT CLAIM.**

Content-based restrictions on speech are presumptively unconstitutional and subject to strict scrutiny. See **Reed** v. **Town of Gilbert**, *576 U.S. 155, 163 (2015)*; **McCoy** v. **Town of Pittsfield**, *59 F.4th 497, 505 (1st Cir. 2023)*. It has long been clearly established that the government may not restrict speech based on its content or perceived impact. See **Texas** v. **Johnson**, 491 U.S. 397, 414 (1989).

Here, a reasonable jury could conclude that Defendant's actions were content-based. His contemporaneous statement—"you're inciting a riot"—reflects a judgment about the communicative impact of Mr. Picard's speech, not a neutral regulation of conduct or volume. And because the use of a megaphone is an "indispensable" means of public expression, **Saia**, *334 U.S. at 561,* the seizure directly burdened core First Amendment activity.

Because it was clearly established that content-based suppression of speech is unconstitutional absent a compelling justification, and because the facts are disputed, Defendant is not entitled to qualified immunity.

## IV.    CONCLUSION

Viewing the evidence in Mr. Picard's favor, genuine disputes of material fact remain—including probable cause, exigency, content-based motive, and adequacy of process—precluding summary judgment. Defendant's Motion should be denied.

Dated: April 9, 2026.    /s/ Michael Picard

> THE PLAINTIFF,
> MICHAEL PICARD
> 142 Bissell St.
> Manchester, CT 06040
> Phone: (860) 306-4955
> Email: Michael@Picard.co

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2026, I filed the foregoing Memorandum in Opposition of the Defendant's Motion For Summary Judgment, and all exhibits attached thereto, through the ECF system, which will be sent electronically to all parties registered, or by first class mail to all parties not registered.

/s/ Michael Picard
Michael Picard

21